Linda TAYLOR *v.* Chris TAYLOR

00-926                                                47 S.W.3d 222

Supreme Court of Arkansas
Opinion delivered June 21, 2001

*Lambda Legal Defense & Education Fund, Inc.*, by: *Patricia M. Logue* and *David S. Buckel*; and *Sullivan Law Firm, P.L.L.C.*, by: *Gary L. Sullivan*, for appellant.

No response.

TOM GLAZE, Justice. This custody case began in 1998, when Linda Taylor was granted a divorce from Chris Taylor. Originally, the chancery court awarded the Taylors joint custody of their two minor children, Jessica and Megan. Megan is the youngest child, and suffers from a developmental disability that

appears to be either a form of autism or attention deficit disorder. In 1999, Chris Taylor petitioned for custody of the girls. He alleged that Linda was engaged in a romantic relationship and cohabitating with Christina Richards. Apparently, Linda had been romantically involved with Richards since the divorce, and the two had purchased a home together.

On August 5, 1999, the chancery court issued a temporary custody order, which contained a non-cohabitation clause that ordered Linda not to permit Christina Richards to remain in residence or to be an overnight guest in the home when the children were present. After the temporary custody order issued, Linda made arrangements for Christina to continue to live in the home and provide care for the children on the nights that Linda worked overnight shifts.

Before the hearing on Chris Taylor's petition for custody, he also moved for the chancellor to hold Linda in contempt of the temporary order. Linda filed a petition for custody to remain with her and moved for a modification of the temporary order to allow Christina Richards to live in the home with her and the children, and continue in her role as a secondary caregiver. Linda also filed a motion for a continuance to allow time for further testing of Megan's developmental disorder to determine whether it was a form of autism. No continuance was granted.

On April 10, 2000, at a hearing on the motions and custody petitions, the court heard evidence from each party, as well as the expert testimony of Dr. Deyoub, a clinical psychologist appointed by the court at Linda's request. Linda attempted to present evidence from two other experts, Dr. Cheralyn Powers, a clinical psychologist, and Anna Vollers, an expert in the care of autistic children. Powers's and Vollers's testimonies were largely foreclosed by the chancellor's rulings on objections from opposing counsel, but Linda proffered her experts' testimonies.

At the conclusion of the hearing, the chancellor adopted Dr. Deyoub's recommendation that primary custody remain with Linda, conditioned upon Christina Richards's removal from the household. Although the court ruled from the bench that Christina must move out immediately, the court modified that ruling, upon Linda's request, to allow an additional thirty days for compliance. The court held Linda in contempt for violating the non-cohabitation clause in its temporary custody order, but withheld punishment pending her compliance with the final order. Despite the

grant of custody in her favor, Linda appealed the custody order, including procedural and evidentiary rulings of the chancellor and his finding of contempt. Linda's arguments are the only ones submitted for review, since Chris Taylor chose not to respond or participate in this appeal.

■■ First, it is important to note the level of deference that a reviewing court will give a chancery court in its *de novo* review of child custody cases. The chancellor's findings will not be reversed unless they are clearly erroneous. *See Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999). This court has held that there is no other case in which the superior position, ability, and opportunity of the chancellor to observe the parties carries a greater weight than one involving the custody of minor children. *See, e.g., Jones v. Strauser*, 266 Ark. 441, 585 S.W.2d 931 (1979). The best interest of the child is the polestar in every child-custody case; all other considerations are secondary. *Id.*

■■ On appeal, Linda argues that Christina's presence in the household is in the best interests of the children. However, this argument appears largely moot because the custody order allows Christina to remain as a caretaker for the children on the nights that Linda has to work, conditioned upon the approval of Dr. Deyoub and Chris Taylor. The circumstance with which the chancellor took issue was Christina's continued presence as a resident in the household, not Christina's caretaker abilities. Arkansas's appellate courts have steadfastly upheld chancery court orders that prohibit parents from allowing romantic partners to stay or reside in the home when the children are present. *See Campbell*, 336 Ark. at 389 (this court and the court of appeals have never condoned a parent's promiscuous conduct or lifestyle when such conduct has been in the presence of a child); *see also Ketron v. Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1995). The *Campbell* court stated that the purpose of the overnight-guest order is to promote a stable environment for the children and is not imposed merely to monitor a parent's sexual conduct. 336 Ark at 389. Linda does not seek to overturn these decisions, but instead tries to distinguish them from the facts here. For example, Linda asserts no evidence has been presented that she has engaged in promiscuous or illicit behavior with Christina Richards in the presence of the children. Linda's argument, however, misses the point. As emphasized by our court's earlier decisions, the trial court's use of the non-cohabitation restriction is a material factor to consider when determining custody issues. *Id.* Such a restriction or prohibition aids in structuring the home place so as to reduce the possibilities (or opportunities) where children may be

present and subjected to a single parent's sexual encounters, whether they be heterosexual or homosexual.[1]

■ Linda has failed to demonstrate how the chancellor erred in finding that it was against the children's best interests for her to remain living in an admittedly romantic relationship with Christina while residing in the home with the children present. Once again, Arkansas case law simply has never condoned a parent's unmarried cohabitation, or a parent's promiscuous conduct or lifestyle, when such conduct is in the presence of a child. *See Campbell, supra,* and the cases cited therein. The chancellor here acted within his authority and was not clearly erroneous in determining that it was not in the children's best interests for their primary custodian to continue cohabitating with another adult with whom she admitted being romantically involved.

■ ■ In her next argument on appeal, Linda alleges certain procedural and evidentiary errors that she contends the chancellor committed. First, Linda contends that the chancellor erred in refusing to grant a continuance. Linda desired to delay the final custody hearing until Megan could undergo scheduled diagnostic testing to better determine whether the source of her developmental disorder was a form of autism. Although there is no ruling in the record, the chancellor conducted the final hearing as scheduled on April 10, 2000. The grant or denial of a continuance is at the discretion of the trial court, and is only reviewed for abuse of that discretion. *See Alexander v. Flake,* 322 Ark. 239, 910 S.W.2d 190 (1995). Linda concludes that, given the relevance of the issue of the care required by Megan, it was an abuse of discretion to deny the continuance. However, she fails to demonstrate how more evidence as to Megan's care would have affected the court's consideration on the cohabitation issue or the outcome of the decision on that issue. *Id.*

Linda further argues that the chancellor abused his discretion in sustaining an objection to expert testimony by Anna Vollers, the Director of the Arkansas Autism Society, on autistic disorders and the care required for autistic children. When counsel for Chris Taylor objected on the basis of relevance, Linda argued that the

---

[1] In oral argument, Linda attempted to raise an Equal Protection issue that children would fare as well with homosexual couples as they would with heterosexual ones, but that argument was not raised and ruled on below. Linda was required to raise those constitutional arguments and obtain a ruling at trial in order to argue them on appeal. *See Warnock v. Warnock,* 336 Ark. 506, 988 S.W.2d 7 (1999); *Stewart v. Winfrey,* 308 Ark. 277, 282, 824 S.W.2d 373, 376 (1992).

testimony was relevant to the determination of Megan's best interest in the level of care and supervision an autistic child required, and the advantages of being cared for by two adults in the home. Based upon the lack of a final diagnosis of Megan's condition, the chancellor excluded Linda's expert from testifying, but allowed her to proffer that testimony for the record.

■ ■ Evidentiary rulings are a matter of discretion, and are reviewed only for abuse of that discretion. *See Ozark Auto Transportation, Inc. v. Starkey*, 327 Ark. 227, 937 S.W.2d 175 (1997). Although two regular caregivers may be desirable in any child custody case, Linda fails to demonstrate how this evidence was relevant to the cohabitation decision, especially in light of the fact that the chancellor was open to the possibility of Christina providing care for the children on the nights that Linda works.

■ Linda next addresses her argument to the chancellor's exclusion of testimony by a clinical psychologist, Dr. Powers, an expert in the area of same-sex parenting. The chancellor sustained Chris Taylor's objection to Dr. Powers's use of research and statistics compiled by others in her testimony, but the court permitted Linda to proffer the evidence. She again argues that the chancellor abused his discretion by refusing her efforts to refute Dr. Deyoub's opinions on same-sex parenting, by allowing Dr. Powers to testify as to research by others. Linda's argument on appeal, that expert testimony may be based upon facts reasonably relied on by experts in the field or upon learned treatises, is correct. *See* Ark. R. Evid. 703, 803(18). However, in view of the fact that Linda retained primary custody, and because the focus of the court's ultimate ruling was not on what type or level of childcare was desirable or required, but upon Christina Richards's continued cohabitation in the household, the chancellor's exclusion of expert testimony on same-sex parenting was not prejudicial error.

Finally, Linda argues that the chancellor's finding of contempt was in error because she had complied with the non-cohabitation clause contained in the temporary custody order by making arrangements so that she and Richards never slept in the home on the same night. From Linda's and Christina's own admissions at the final hearing, and despite the living arrangements that she devised in reaction to the non-cohabitation order, Linda still considered Christina to be a resident of the household and allowed her to remain living there overnight in the presence of the children, three nights a week when Linda worked overnight shifts.

█ As the chancellor noted in finding Linda in contempt of his order, the temporary order clearly mandated that Christina be removed from the same household as the children and forbade Linda from sharing the residence and living arrangements with Christina when the children were present. Christina's continued residence in the home was a violation of the express terms of the non-cohabitation clause, and the chancellor did not err in holding Linda in contempt. It is important to note that the custody order conditions Linda's continued custody on compliance with this provision and allows custody to revert to Chris Taylor should he demonstrate that Linda has failed to comply with the non-cohabitation order.

Affirmed.