Cite as 2025 Ark. App. 95

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-743

| | |
|---|---|
| JAMES GILLUM<br><div align="right">APPELLANT</div> | Opinion Delivered February 19, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. 60DR-19-2194] |
| V. | |
| LINDSEY GILLUM<br><div align="right">APPELLEE</div> | HONORABLE CASEY R. TUCKER, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This is an appeal of the Pulaski County Circuit Court's July 18, 2023 order concerning the parties' property division in a divorce.[1] Appellant James Gillum ("Jim") and appellee Lindsey Gillum ("Lindsey") were married on June 16, 2014, and filed for divorce on July 17, 2019. On appeal, Jim argues the circuit court clearly erred in its division of property--specifically, that the circuit court failed to determine the fair market value of HouseCall and failing to award one-half of its value to him. He also argues that the circuit court erred in awarding the entire interest in Revive to Lindsey. We affirm.

---

[1]On December 15, 2020, the circuit court entered an order granting the divorce and holding the remaining issues—including the issue of property division—in abeyance.

The parties are both educated professionals. Jim received an undergraduate degree from the University of North Texas, and a master of business administration from the University of Texas at Austin. Lindsey received an undergraduate degree from Hendrix College, a degree in nursing from the University of Arkansas for Medical Sciences, and a master of nursing from Indiana State University. She had a career as a nurse practitioner before the marriage.

When the parties married in 2014, Jim's salary was $120,000. Jim became unemployed in February 2015 and did not go back to work until December 2017. During this period, the parties received food stamps for a time to support the family, and Jim took up amateur cycling. During Jim's unemployment and pursuit of his hobby, Lindsey hired two nannies to assist with caring for the minor children.[2]

In order to support the family, Lindsey started two businesses: HouseCall and Revive. Revive is a healthcare clinic that provides a variety of healthcare services to patients. HouseCall was formed first to collect health insurance receivables. The businesses were interrelated and operated under the same roof; however, since 2018, Revive remained the only business that provided services to patients. Lindsey asserts that Revive is the only practically functioning business, and HouseCall maintains a bank account for insurance-receivables deposits.

---

[2]Lindsey has three children from a previous marriage; Jim and Lindsey have two children together.

Revive incurred significant debt to start the businesses, including loans to lease space, to build out the business in the leased space, and for equipment. At the time of the final divorce hearing in October 2020, the business owed approximately $400,000 in debt. Jim did not offer evidence to show he contributed to Lindsey's businesses during the marriage aside from painting and putting in flooring when Lindsey started the business. Jim was not involved in any of the accounting or any other business operations at any time. Jim informed Lindsey early on that he was going to attend one business meeting, though he did not attend the meeting because he was on a bike ride.

After Lindsey filed for divorce in July 2019, the circuit court held a hearing on October 20, 2020, but the hearing did not conclude. Due to the Coronavirus pandemic, the hearing was held via Zoom. Lindsey had an expert prepared to testify to the value of the business. Jim had no valuation expert. As noted, the court entered the divorce decree in December 2020 but also ordered valuations of the remaining assets, including Jim's retirement account and Lindsey's business. The court ordered Jim to pay for the valuations.[3] The remaining property-division issues held in abeyance were heard at a hearing on May 3, 2023.[4]

---

[3]For a myriad of reasons not relevant to this appeal, those valuations did not occur.

[4]The 2020 divorce proceedings were in front of Circuit Judge Cathleen V. Compton; Circuit Judge Casey R. Tucker presided over the 2023 hearing and entered the subsequent July 18, 2023 order that is now the subject of this appeal.

During that hearing, Lindsey produced two experts: Mark Todd testified concerning the value of Revive, and Reid Smith testified concerning the amount of appreciation of Jim's retirement accounts during the marriage. Jim did not object to Todd's designation as an expert, and Jim did not produce his own expert to provide any valuation. During Todd's testimony, Lindsey introduced various statements into evidence regarding debt owed by the business at the time of divorce. The debt included $396,770.12 in loan consolidation for the business; $57,927.87 for equipment; and $48,000 for a COVID-19 small-business loan.

Todd reviewed all bank accounts and other financial statements, including bank accounts and financial information for HouseCall, to arrive at his valuation for Lindsey's business. Jim did not produce an expert or any evidence to refute the debt that was associated with Lindsey's business. In Todd's report, which was admitted into evidence without objection, Todd opined that the net equity value of Lindsey's 100% interest in her business is best expressed as negative $185,000 as of December 31, 2020. Todd also stated that Lindsey maintained personal goodwill associated with the business.

At the conclusion of the hearing, Jim and Lindsey agreed through counsel that the circuit court would apply the December 15, 2020 date of divorce for the purpose of valuing the business and Jim's retirement accounts. Jim also agreed to divide his retirement accounts as Lindsey's expert had valued Lindsey's marital share of his retirement accounts. The court noted in its ruling that there were business debts that could not be ignored. It also did not find Jim's testimony credible that he participated in the business other than maybe doing some initial setting up of the floors and painting. The court awarded Lindsey all interest in

4

the business and ordered her to be responsible for all debt associated with the business. This timely appeal is now properly before us.

Domestic-relations cases are tried de novo on appeal, and the appellate court does not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000). Further, a circuit court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001).

The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Id.* With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999). In reviewing a circuit court's findings, we defer to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Keathley*, 76 Ark. App. 150, 61 S.W.3d 219. The circuit court is given broad powers to distribute both marital and nonmarital property to achieve an equitable division, and the overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable. *Howard v. Howard*, 2024 Ark. App. 566, at 8, 701 S.W.3d 48, 53.

Arkansas Code Annotated section 9-12-315 (Repl. 2020) provides that all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. In that event, the circuit court shall make some other division that the court deems equitable taking into consideration numerous factors which are listed in the statute. Ark. Code Ann. § 9-12-315(a)(1)(A)(i)–(ix). When an unequal division of property is made pursuant to these considerations, the court's order must state its basis and reasons for doing so. *Id*. § 9-12-315(a)(1)(B). However, while the circuit court must consider these factors and state its reasons for dividing the property unequally, it is not required to list each factor in its order nor to weigh all the factors equally. *Keathley*, *supra*.

In the court's order, the circuit court ruled that Jim "took no action to acquire, preserve, or appreciate Lindsey's business." Over the course of three years of litigation and two hearings regarding property division, Jim offered the circuit court no evidence that he participated in the business, nor did Jim refute Lindsey's testimony that for the majority of the marriage– including his period of unemployment––he was riding his bike while she ran her business and employed nannies to assist with caring for the minor children.

On appeal, Jim argues that the circuit court clearly erred by failing to determine the fair market value of HouseCall and by not awarding him one-half of its value. The testimony at trial made it clear that HouseCall and Revive are intertwined. In Jim's closing argument, Jim did not ask for a separate valuation on Housecall but instead credited Todd's opinion that the "business" is worth $250,000, and Jim asked for half of that amount. However, Revive also had $435,000 in debt associated with the business that the circuit court found

6

to be a negative "hard asset value." To the extent that Jim now asserts that the circuit court failed to determine the fair market value of HouseCall separate and apart from Revive, his failure to raise this argument below precludes review of the issue on appeal. *Brown v. Lee*, 2012 Ark. 417, at 7, 424 S.W.3d 817, 821. Appellants are bound by the scope and nature of the arguments made at trial; they cannot change the grounds on appeal. *Id.* Accordingly, we affirm.

Jim next argues that the circuit court clearly erred in awarding Lindsey the entire interest in Revive. At the hearing, Lindsey's expert, Mark Todd, provided a valuation of Lindsey's business. At both hearings on property-division issue, Lindsey testified that HouseCall was an entity that received and processed insurance payments for services, but the primary operating business was Revive. The payments flowed through to Revive's bank accounts since this was the only business that was providing services to patients after 2018.

At the time of the parties' divorce, Todd's valuation included and reflected the net worth of accounts associated with Revive and HouseCall as of December 31, 2020. Todd's report incorporated data points with respect to both the assets and operations of the business. This included all accounts and financial information for Revive and HouseCall, which essentially function as one unit. Additionally, Todd analyzed the debt on the business in arriving at his figure for Lindsey's total equity in the business at the time of divorce.

Having considered the record before us and our standard of review, we hold that the circuit court properly found that the assets of the business had a value of $250,000, but the business debts offset that value, resulting in a negative hard asset value. The circuit court

7

further found that Jim offered no expert testimony regarding the assets, debts, and valuations of the companies.

The circuit court concluded that to the extent Revive has any value, that value would be goodwill since there is a negative hard asset value. Jim argues that he has met his burden of establishing that Revive's goodwill is professional goodwill as opposed to personal goodwill and is therefore marital property. Whether goodwill is marital property is a factual question, and a party—to establish goodwill as marital property and divisible as such—must produce evidence establishing the salability or marketability of that goodwill as a business asset of a professional practice. *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). However, Todd opined that Lindsey maintained personal goodwill associated with the business, and Jim failed to offer any testimony to establish otherwise. Thus, we hold that Jim's argument is without merit.

In conclusion, we note that in deciding a division of property, the circuit court need not do so with mathematical precision. *Friend v. Friend*, 2010 Ark. App. 525, 376 S.W.3d 519 (citing *Coatney v. Coatney*, 2010 Ark. App. 262, 377 S.W.3d 381). Because we cannot say the circuit court's valuation of Revive was clearly erroneous, we affirm.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Kamps & Griffis PLLC*, by: *Adrienne M. Griffis*, for appellant.

*McMath Woods, P.A.*, by: *Timothy J. Giattina*, for appellee.

8