Cite as 2025 Ark. App. 161

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-829

| | |
|---|---|
| ROBERT LYNN HYLER | Opinion Delivered March 12, 2025 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72DR-21-445] |
| V. | |
| MICHELLE DAWN HYLER | HONORABLE DIANE WARREN, JUDGE |
| APPELLEE | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Robert Hyler appeals the Washington County Circuit Court's division of property in his divorce from appellee Michelle Hyler. Specifically, Robert argues that the circuit court erred in ordering the sale of approximately 2.5 acres of his nonmarital property on which the marital residence was added, with the proceeds to be distributed equally between the parties. We affirm the circuit court's decision.

The parties were married on May 13, 1997, and a decree of divorce was entered on February 22, 2023. In addition to its division of personal property, which is not at issue in this appeal, the circuit court ordered an 11-acre tract that the parties owned jointly to be sold and the proceeds divided; returned to Michelle five parcels of real property that she owned prior to the marriage; and returned to Robert three parcels of real property that he owned prior to the marriage—a 39.32-acre tract, a 40-acre tract, and a 19-acre tract—with the

exception of approximately 2.5 acres of the 40-acre tract where the parties' marital home was located (the marital residence). In the divorce decree, the circuit court recognized that the real property on which the marital residence was located belonged to Robert prior to the marriage; that the marital residence was purchased using money from both parties after they had married and was moved from its original location to the real property owned by Robert; that the marital residence and Robert's nonmarital real property had become commingled such that valuation of each separate property was not possible; that the marital residence could not be moved; and that no evidence was presented regarding the value of the marital residence separately from Robert's nonmarital real property or vice versa. The court further found that when Robert and Michelle mutually agreed to place the marital residence on Robert's nonmarital property, it became part of the property, and while the real property continued to belong to Robert and the marital residence was marital property, the properties were physically intertwined and could not realistically be separated. The circuit court found that the equitable solution was to sell the marital residence and the 2.5 acres of Robert's nonmarital real property on which the marital residence was located and divide the proceeds equally between Robert and Michelle.

Domestic-relations cases are tried de novo on appeal, and the appellate court does not reverse a circuit court's findings unless they are clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Gillum v. Gillum*, 2025 Ark. App. 95. A circuit court is given broad powers to distribute both marital

2

and nonmarital property in order to achieve an equitable distribution; the overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Id.* In reviewing a circuit court's findings, we defer to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*

Arkansas Code Annotated section 9-12-315 (Repl. 2020) provides that all marital property shall be distributed one-half to each party unless such a division would be inequitable, and all other property shall be returned to the party who owned it prior to marriage unless the court makes some other division that it considers to be equitable. If a circuit court determines, for equitable reasons, that marital property should be unequally distributed or that nonmarital property should not be distributed to the party who owned it prior to the marriage, the court must take into consideration the length of the marriage; the age, health, and station in life of the parties; the occupation of the parties; the amount and sources of income; their vocational skills; their employability; the estate, liabilities, and needs of each party and the opportunity of each for further acquisition of capital assets and income; the contribution of each party in the acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the court's division of property. Ark. Code Ann. § 9-12-315(a)(1).

Robert argues that the 2.5 acres should have been awarded to him as his nonmarital property, and the most Michelle could expect was a monetary award for the value of any marital improvements she could prove she had made to the property. He also argues that

Michelle failed to prove the value of the land before and after improvements were made with marital funds. Last, he argues that the circuit court failed to address the factors listed in section 9-12-315 when making an unequal distribution of property.

It is undisputed that the 2.5 acres of real property on which the marital residence was located was Robert's nonmarital property, which was acknowledged by the circuit court. The parties agreed that, during the marriage, Michelle had purchased the house that they agreed to move onto Robert's nonmarital property. Michelle testified that she paid $17,000 for the house from funds in her 401(k), while Robert testified that the house cost $12,000, but he admitted that Michelle had provided the money for the house. The parties made improvements over the twenty plus years they lived in the marital residence, including bulldozing the land and pouring a foundation for the house, running plumbing and electricity, adding a metal roof, building an outside fireplace and privacy fence, and painting and adding flooring. Michelle testified that she and Robert had mortgaged the marital residence for various reasons and had repaid the mortgage with marital funds. Robert admitted in his testimony that he did not have the ability to buy Michelle out of any interest that she claimed in the marital residence; he testified that he believed it was fair for Michelle to be awarded no interest in the marital residence and the 2.5 acres, even though she had invested time and money into it over the years because "she knowed it was on my land." Both Michelle and her son testified that the marital residence could not be moved.

The divorce decree stated that the parties married in 1997; therefore, at the time of divorce, they had been married twenty-five years. In making its determination regarding

4

property division, the circuit court acknowledged in the decree that the property-division statute's purpose is to ensure that property is divided fairly and equitably under the circumstances; that such a division did not compel mathematical precision, only equitable distribution; and that as a general rule, a spouse's property acquired before marriage remains his or her exclusive property upon divorce, but a narrow exception to that rule has been recognized when marital funds have been used to improve nonmarital property or reduce its debt. The court also noted in the decree that it had taken into consideration the parties' limited income and cash flow: Robert's source of income is Social Security, and Michelle relies on her monthly Social Security Disability income of $2500.

Robert argues that *Williford v. Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983), is the seminal case on the issue of determining the increased value of nonmarital property by marital contributions. However, *Williford* and its progeny are distinguishable from the present case. In *Williford*, the house and real property were owned by the husband prior to the marriage; the parties added the wife to the homeowner's insurance policy; the house was damaged by a tornado; and the parties used the proceeds from the insurance company to pay off a mortgage and make a down payment on rebuilding the house. While the husband retained the real property and the house because it was his property prior to the marriage, the trial court awarded the wife a marital interest in the rebuilt house and the appreciated value of the house while crediting the husband with the value of the salvaged items from the original house that were used in rebuilding the new house. Our supreme court agreed with the trial court that the husband was entitled to retain the house and real property that he

brought into the marriage and that the wife had a marital interest in the property; however, it tweaked the numbers the trial court had used, affirming the decision as modified.

There is an important distinction in the present case. While the real property belonged to Robert prior to marriage, the marital residence did not exist on the property until after the parties had married, and they agreed to place that marital asset on Robert's nonmarital property. Michelle paid for the marital residence and paid to move it onto Robert's nonmarital real property, and the parties used marital funds to make improvements to the marital residence and the surrounding real property while they lived in the house for over twenty years. In the decree, the circuit court found,

> When [Robert and Michelle] mutually agreed to place the house on [Robert's] property, it became part of the property, much as in a rented property, any improvement which cannot be detached form the rented property becomes part of the residence. In this case, while the real property continues to belong to [Robert] and the house is marital property, the properties are physically entwined and cannot (realistically) be separated.

Furthermore, neither party offered a valuation of the real property and the marital residence at the time of divorce, either as one parcel or separately. The only monetary value presented to the circuit court was that Michelle provided either $12,000 or $17,000 to purchase the marital residence and have it moved onto Robert's real property. Given the lack of evidence, we cannot say that the circuit court's determination that the nonmarital and marital property were so intertwined that they could not be valued separately and could not realistically be separated, and that the equitable solution, based on the facts presented,

was to order the 2.5 acres and the marital residence sold and the proceeds divided equally, is clearly erroneous.

Robert also argues that the circuit court failed to consider the factors listed in section 9-12-315 for distributing nonmarital property to the party who did not own it prior to marriage. We disagree. In the divorce decree, the circuit court noted that the parties had been married since 1997; Robert's income consisted of Social Security, and Michelle's income consisted of Social Security Disability; and there was consideration of the limited income and cash flow of both the parties. Furthermore, the decree set forth the parties' other nonmarital properties as well as the debts, including a tax debt owed for unreported gambling income. Although interspersed throughout the divorce decree, we cannot say that the circuit court failed to consider the factors set forth in section 9-12-315 in making its decision to order the marital residence and the 2.5 acres of Robert's nonmarital real property sold and the proceeds divided.[1]

Affirmed.

KLAPPENBACH, C.J., and WOOD, J., agree.

---

[1] We note that, in his reply brief, Robert argues that the 2.5 acres was located in the middle of his nonmarital 40 acres and that the sale of that section of property would require him to add access roads and/or incur negotiations regarding easements. He further argues that he might have secured a loan or sold a separate parcel of land to buy Michelle out of the marital residence, but the circuit court did not give him an opportunity to do so. These arguments are not preserved for appeal because they were not made to the circuit court and are being raised for the first time on appeal in his reply brief. We will not consider an argument raised for the first time in a reply brief. *Yafai Invs., Inc. v. Arkmo Foods, LLC*, 2021 Ark. App. 484, at 3 n. 2.

*Graves Law Firm*, by: *Josie N. Graves*, for appellant.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sara L. Waddoups*, for appellee.