Victor CHIOLAK  *v.*  Patricia CHIOLAK

CA 06-1217                                          259 S.W.3d 466

Court of Appeals of Arkansas
Opinion delivered June 20, 2007

*Michael U. Sutterfield*, for appellant.

No response.

DAVID M. GLOVER, Judge. In this one-brief case, appellant, Victor Chiolak, appeals from an order of protection entered on July 11, 2006, in the First Division of the Circuit Court of Faulkner County. He raises three points of appeal: 1) the trial court lacked subject-matter jurisdiction to enter the order of protection; 2) the issues raised in the petition for order of protection were barred by the doctrine of res judicata; and 3) alternatively, the order of protection was ambiguous and must be interpreted to allow visitation with his son pursuant to any orders by the Second Division of the circuit court. We find no error and therefore affirm.

The parties' agreed divorce decree was entered on June 13, 2006. It contained standard visitation and was handled in the Second Division of the Faulkner County Circuit Court. On June 14, 2006, appellee, Patricia Chiolak, filed a petition for an ex parte temporary order of protection in the First Division of the Faulkner County Circuit Court, and such an order was entered on the same date. The petition alleged that appellant had physically abused the parties' child, Stefan Chiolak. On July 11, 2006, a hearing on the petition was held.

Stefan testified in camera. He stated that he was ten years old; that he had gone on vacation to California with his father; that when they got back, his father accused him of stealing his father's girlfriend's daughter's wallet and money; and that his father slapped him, choked him, put his knee in his chest, and slammed him into the wall, giving him a knot on his head, a black eye, and some bruises. Stefan stated that he had been afraid of his father for years and claimed that his father had done that sort of thing before, just not to that extent. He told the judge that he did not want to go

to his father's house, that his father had told him he better not tell anyone, and that he was afraid he would be in trouble with his father.

Patricia Chiolak testified that Victor called her at 2:00 a.m. Sunday morning, June 11; that he expressed anger at Stefan for breaking up their relationship and that with his girlfriend; and that he did not indicate he had done anything to Stefan. Patricia stated that Victor returned Stefan to her house on the evening of June 11; that she noticed a black eye and bruising on Stefan; and that Stefan begged her not to say anything to Victor because Stefan expressed fear that he would be beaten worse next time.

Patricia explained that she had signed the divorce papers on June 7, approximately a week before Victor and Stefan returned to Conway from California; that Victor signed them when he returned from California; that the decree dealt with all issues concerning visitation "except what would happen if he weren't good to my child"; that there had been issues with violence from his father before; that she wanted to get the divorce "out of the way"; that the decree was entered on June 13 and she filed her petition for order of protection the next day; and that she had filed previous petitions for protection because of harm Victor had done to Stefan but it had never involved "anything as serious as this."

Victor Chiolak testified and denied striking Stefan at any time since he and Patricia had separated; that he had never put his hands on Stefan's neck; that he had received a call telling him that Stefan had stolen money from Denise Colton; that he confronted Stefan about it; that he searched Stefan's room and backpack but found nothing; that he did not discipline Stefan in any way because he was "in a quandary" about what to do; and that he did not cause any bruising to Stefan.

Victor testified that he was not aware of any bruises on Stefan when he took him home; that the only time he saw them was at Patricia's house; that he was upset when his girlfriend called and claimed Stefan had stolen money; that he did confront Stefan about it; and that he did not know how the bruises got on Stefan.

Gary Ash testified that he had witnessed Stefan in incidents that he would consider questionable regarding Stefan's honesty; that he never saw anything to make him question Victor's ability to parent Stefan; and that he knew nothing about the bruises.

At the conclusion of the hearing, the trial court found that the issues turned on credibility; that he found Stefan's and Patri-

cia's testimony to be very credible; and that he was therefore granting the order of protection, to expire in two years. The trial court also stated that "visitation rights with regard to the minor child will be established as provided by a court having divorce/custody jurisdiction. At this point it is stopped." Victor's counsel asked, "Your Honor, I take it that the order can be modified by order of the chancery court?" and the court responded, "It may be, after a hearing or by agreement."

For his first point, appellant contends that the trial court lacked subject-matter jurisdiction because "there was an ongoing divorce proceeding in the Second Division." In making his argument, he acknowledges that pursuant to Arkansas Code Annotated section 9-15-201(f) of the Domestic Abuse Act of 1991, a petition for order of protection may be filed regardless of whether there is any pending litigation between the parties but argues that under *Clark v. Hendrix*, 84 Ark. App. 106, 134 S.W.3d 551 (2003), a court should refrain from exercising its jurisdiction over a petition for protective order when a party's right to visitation is at issue in an ongoing divorce proceeding. His reliance upon *Clark* is misplaced in this case.

In *Clark*, there was an ongoing proceeding in a Pulaski County Circuit Court concerning a visitation dispute between the parties. In addition, the Pulaski County court had available to it the same testimony concerning an alleged abuse incident that occurred in White County. The White County Circuit Court assumed jurisdiction over the matter despite being on notice that the Pulaski County court had either dealt with the specific matter or was in the process of dealing with it. We held that the White County Circuit Court should have refrained from exercising its jurisdiction as a matter of comity because the protective order that it entered dealt primarily with the issue of whether appellant could exercise his right to visitation for another year, which directly affected a valid and ongoing visitation order from the Pulaski County Circuit Court.

Here, on the other hand, at the time appellee filed her petition for a protective order in the First Division, the Second Division circuit court had already entered an agreed upon divorce decree that contained a standard order of visitation. There was no ongoing dispute about anything between these parties in the Second Division, much less about visitation, and the abuse allegation had not been presented to the Second Division. Appellee thus filed her petition for a protective order in the *same* county, albeit in

a different circuit-court division than where the divorce action had been held. At all times, however, Faulkner County Circuit Court had subject-matter and personal jurisdiction over the parties. More importantly, in granting the order of protection, the First Division made it very clear that while it was stopping appellant's visitation pursuant to the protective order, the protective order was subject to modification by the Second Division. That is, far from usurping the Second Division's authority, the First Division deferred to it, specifically stopping visitation only until the Second Division could conduct a hearing and rule on the issue in light of the child's allegations of abuse. Accordingly, we find that the circumstances of the instant case are distinguishable from those presented in *Clark, supra*, and that there was no error in the trial court's exercise of jurisdiction under the circumstances presented here.

For his second point, appellant contends that the issues raised in the petition for order of protection were barred by the doctrine of res judicata. We disagree.

In *Linder v. Linder*, 348 Ark. 322, 339-40, 72 S.W.3d 841, 850 (2002), our supreme court explained that a more flexible approach to the doctrine of res judicata is required concerning child–custody matters:

> Custody matters, however, are different when the doctrine of *res judicata* is called into play. When the matter is a custody issue, our court takes a more flexible approach to *res judicata*. We recognize, for example, that custody orders are subject to modification in order to respond to changed circumstances and the best interest of the child. . . . For example, in *Tucker v. Tucker*, 195 Ark. 632, 636, 113 S.W.2d 508, 508 (1938), we said:
>
>> The judgment of a chancery court in this state, awarding the custody of an infant child to one of the parents, or to any other person, is a final judgment, from which an appeal lies, but it is not *res judicata* in the same or another court of this state involving the custody of the same child, where it is shown that the conditions under which the former decree was made have changed and that the best interest of said child demand a reconsideration of said order or decree.

Appellant argues that under the doctrine of res judicata, not only is the relitigation of claims that were actually litigated barred, but also those that *could* have been litigated. That is, he argues that because the facts

that gave rise to the protective order occurred before entry of the divorce decree, those issues could have been raised in the divorce action, and, accordingly, that the trial court erred when it refused to bar appellee's petition for a protective order based on the doctrine of res judicata.

■ Here, the alleged abuse occurred after the divorce case and its accompanying visitation schedule had been agreed upon by the parties. Appellee had already signed the necessary divorce papers and was merely awaiting appellant's signature, and then approval and entry of the decree by the trial court. The child's allegations of abuse arose just two days before the decree was entered. We find no error in the trial court's refusal to apply the doctrine to bar the petition for a protective order in this case.

For his final point, appellant contends, "In the alternative, the ambiguous order of protection must be interpreted to allow visitation with the parties' son pursuant to any orders by the division of the circuit court with jurisdiction over the parties' divorce." We find no ambiguity and no basis for reversal.

■ The order of protection provides: "Visitation rights with regard to the minor child(ren) are established as follows: as provided by Court having Divorce/custody Jurisdiction." Moreover, at the conclusion of the hearing on the petition for order of protection, appellant's counsel specifically asked the trial court if the protective order could be modified by order of the chancery court. The trial court responded that it could be modified after a hearing before the other court having such jurisdiction. Visitation is always modifiable, subject of course to a finding of change in circumstances. *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). Consequently, appellant's final point of appeal provides no basis for reversal of the protective order.

Affirmed.

HART and GRIFFEN, JJ., agree.