2014 Ark. App. 269

**Robert E. BAMBURG, Appellant**

v.

**Lisa J. BAMBURG, Appellee.**

**No. CV–13–501.**

Court of Appeals of Arkansas.

April 30, 2014.

Allred Law Firm, by: Allison R. Allred, for appellant.

Kathy L. Hall and Carol D. Nokes, for appellee.

KENNETH S. HIXSON, Judge.

This is the second appeal between divorced parents, appellant Robert (Bob) Bamburg and appellee Lisa Bamburg regarding orders issued by the Pulaski County Circuit Court. The parties were married for over twenty years and had two children—daughter EB born in 1995 and son JB born in 1996. JB suffers from significant disabling non-verbal autism. The July 2010 decree awarded the parties joint custody of the minor children, but determined that Lisa was to be the primary custodian and awarded Bob liberal visitation.[1] Pertinent to this appeal, the decree provided that when the minor children were present, neither party was to have "an overnight guest with whom the party has a romantic relationship" including "vacations or any trips." In the first appeal, Bob contended that the trial court clearly erred in awarding primary custody of the parties' two minor children to Lisa, and both parties appealed the trial court's findings on division of specific marital assets. We affirmed the award of custody and the majority of marital-property-division findings in an opinion handed down on

September 21, 2011. *See Bamburg v. Bamburg*, 2011 Ark. App. 546, 386 S.W.3d 31. In that opinion, our court recounted the extensive history of the parties' divorce proceedings and the evidence leading to the custody decision.

While the first appeal was still pending, the parties continued to vociferously litigate multiple matters relating to their divorce and filed numerous competing motions for contempt. Each party accused the other of being noncompliant with issues that included child-related reimbursements, child support, educational decision-making, property exchanges, payments for various debts, and asset distribution. Relevant here, Bob sought to have Lisa held in contempt for violating the "overnight guest" provision of the decree by having her romantic partner, Mary Alice Hughes, accompany her and the children on overnight trips to Hawaii, Texas, and Tennessee, all within six months of the divorce decree. Bob's motion for contempt was filed in December 2010.

After a hearing on these issues in March 2011, the trial judge found Lisa in contempt of court for violating the "overnight guest" provision of the decree. In an order dated April 15, 2011, the trial court found that the "out of town trips with Mary Alice Hughes staying in another room different from [Lisa] and the children is merely splitting hairs and is an attempt by [Lisa] to circumvent the court's order." Further the trial court stated: "This court has no interest in controlling the romantic interests of either the defendant or the plaintiff, but it does have an interest in adhering to established case law

1. Bob's visitation schedule included every other weekend; three hours on a night each week; alternating spring break week; alternating major holidays; every Father's Day; and the first two weeks in June, July, and August. Liberal contact was encouraged for each parent, to include participation in the children's educational, medical, and extracurricular activities, as well as liberal electronic communications between each parent and children.

when it concerns the children." Lisa filed a motion for reconsideration and for clarification. The trial court thereupon clarified the "overnight guest" provision in a June 14, 2011 order:

2. The court has given considerable thought to this issue and acknowledges that because of the specific facts of this case, it is necessary to be as clear as possible regarding the contact either party may have with a romantic partner while in the presence of the minor children.

3. The parties have a distinct difference of opinion as to what is in the children's best interest regarding the contact of the Plaintiff's romantic partner with the children on both a daily basis and an overnight basis. They have an intense distrust of each other which has heightened the animosity between them.

. . . .

7. The court finds that a clear bright line rule must be established in this case so that the parties will understand their limitations. It is not the intent of the Court to punish either Plaintiff or Defendant for having romantic partners in their lives, as it is normal to bring romantic partners around the children. However, it is the responsibility of the Court to ensure that the sole emphasis remains on what will be in the best interest of the children, especially in a case like this where the parties cannot agree and constantly debate about what is best for their children. The Court does this by setting out guidelines and limitations that apply until the children turn age 18 and graduate from high school.

. . . .

9. The Court, therefore, orders that when the children are present neither party shall allow an overnight guest with whom the party has a romantic relationship. This prohibition also includes taking a romantic partner on any vacations or any trips when the children are present, regardless of whether the romantic partner has separate accommodations, lodgings or sleeping arrangements. The Court is aware that it has no jurisdiction over the romantic partners and they are free to travel as they desire. The Court does have jurisdiction over the Plaintiff and Defendant and will view any variation of this ruling as a violation of not only the spirit of this Order but the specific prohibitions contained in the Order.

Thereafter, Lisa filed a timely notice of appeal designating an appeal of the contempt order and clarification order. Ultimately, though, Lisa filed a motion to dismiss her appeal in September 2011, just prior to our court's decision in the first appeal.

In April 2012, Lisa filed a "Motion to Modify Summer Vacation and Travel Restrictions." In her motion, Lisa requested that the court modify Bob's summer visitation schedule with JB due to the fact that JB was currently enrolled in a year-round school and that the existing summer visitation plan was not compatible with year-round schooling. Lisa also requested that the court lift the "overnight guest" prohibition because the eldest daughter was going to attend college at Baylor in the fall and "because of the severity of the younger child's disability, [JB] is unable to understand romantic relationships and will not be negatively impacted by an overnight guest in his presence." Further, Lisa requested the court to allow her romantic partner to move into the same residence with her and her son because "the younger child cannot understand the implications of overnight guests." And, thereafter in an amended

motion, for the same reasons, Lisa requested that the court remove the prohibition against Mary Alice Hughes traveling with her and JB.

In May 2012, Bob filed a motion to dismiss Lisa's motion to modify, contending that it was barred by res judicata and collateral estoppel, along with a request that custody be changed to him based on Lisa's "continued illicit behavior and noncompliance with Court orders." Bob formally denied Lisa's allegations that there needed to be any changes to his visitation schedule or to the rules of behavior related to travel or cohabitation.

After a hearing in October 2012, the trial court denied Bob's motion to dismiss, finding that because Lisa had alleged a material change in circumstances, she would be given an opportunity to establish those asserted changes. By the time these issues were fully litigated by the trial court, the parties' daughter EB had graduated high school, moved to college in Texas, and reached the age of majority. JB, then sixteen years old, remained legally impacted by the trial court's orders.[2]

The trial court took evidence and testimony in January 2013 over these issues. Testimony was given by Tim Thomas, clinical administrator at Pathfinder Academy, who holds a master's degree in early childhood special education. JB attends Pathfinder Academy, and Mr. Thomas stated that the year-round school schedule at Pathfinder was implemented for the benefit of children with autism and that routine and consistency are very important for autistic children. He opined that JB understands relationships as they relate to himself but has limited understanding of relationships between other people. Lindsey McDaniel, one of JB's speech-language pathologists, affirmed that JB remained nonverbal, but said that he uses an electronic device to help communicate. Ms. McDaniel testified that JB could answer more concrete or visual questions but had difficulty answering abstract questions. She stated that JB exhibited anxiety-ridden behaviors when he would be going to, or coming back from, his father's for extended periods of time. JB's occupational therapist, Alisa Hooper, testified that she worked with JB on a daily basis to improve his ability to perform self-care activities like brushing his teeth, taking care of money, dressing, and going to the bathroom. Ms. Hooper confirmed that JB has great difficulty with changes in his schedule and, like others with autism, needs consistency.

Lisa testified at length about how much she had come to depend upon Mary Alice Hughes as a vital part of JB's daily-care team. She stated, by way of example, that it was very difficult for her to handle JB's recent stomach illness all on her own without help. She stated that to some degree, she was dependent on Mary Alice to help with caring for JB because he had certain things that he wanted only Mary Alice to do for him. Lisa said that Mary Alice arrived early in the morning to help get him up, fed, and ready for school, and she helped with transportation to and from school, as well as with playtime, meals, and bedtime, after which Mary Alice would leave. She described Mary Alice Hughes as "one of his caretakers" and "part of his routine." She said that JB was accustomed to spending time with her, that he loved and adored her, and that Mary Alice was a big part of JB's life. Lisa amplified what the professionals at Pathfinder Acad-

---

**2.** At present, JB is seventeen years old. He will reach the age of majority in December 2014.

emy had stated, as it concerned JB's regression in academic and social settings when there was extended visitation with his father.

Bob testified that he was actively engaged in his children's lives and educations, and he expressed concern that he was being replaced as a parent by Mary Alice. Bob reaffirmed his concerns that he expressed from the very beginning of the divorce proceedings, commenced in 2009. Bob denied that he was anything other than a positive, structured parent, just as JB needed. Bob said that his mother lived with him and assisted some with JB's care, but that he did not require his mother's assistance. He was strongly opposed to Mary Alice spending more time with his son than he did, and he was opposed to the women's relationship on a personal, religious, and legal level. Bob was resistant to any changes in his visitation periods, unless it was to increase them.

After taking the evidence under consideration, the trial court modified Bob's six-week summer-visitation schedule, originally set in three two-week intervals, changing them to six one-week intervals spread over six months (one week in June, July, August, October, February, and April). The trial court rejected any reduction in visitation with Bob, who was found to be a concerned parent willing to spend the time with and effort for his son. The trial court found that this modification would accommodate JB's need for year-round consistent scheduling and schooling, specifically acknowledging the testimony of Pathfinder Academy personnel. The trial court refused to remove the "no overnight guest" clause or to permit unmarried cohabitation but did modify the travel restriction by finding that Lisa was permitted to have Mary Alice accompany her on vacation or trips in JB's presence but only if Mary

Alice slept in separate accommodations. The trial court remarked that Mary Alice was JB's caregiver on a daily basis, from approximately 6:00 a.m. until 9:00 p.m. on typical days, helping JB with dressing, meals and snacks, transportation to and from school, and playtime, and it noted that EB had left for college. A nine-page order was entered by the trial court on January 29, 2013, commemorating these findings. Bob's subsequent motions for reconsideration and for additional findings of fact were denied.

Bob appeals the changes to his visitation schedule and the order regarding Mary Alice Hughes traveling with Lisa and JB. Bob contends that Lisa was procedurally barred from seeking any modification and that the trial court's findings are clearly erroneous and not supported by any material change in circumstances. The trial court also ordered Lisa to reissue a $9000 check to Bob in order to compensate him for previously awarded sums due as a result of the first appeal. Lisa cross-appeals this portion of the order. We affirm on direct and cross-appeal.

With regard to custody and visitation, the primary consideration is the welfare and best interest of the children involved; all other considerations are secondary. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699; *Hicks v. Cook*, 103 Ark.App. 207, 288 S.W.3d 244 (2008). A party seeking a change in visitation has the burden to demonstrate a material change in circumstances that warrants a change. *Baber, supra.* Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.* Modification in a custody order also requires a showing of a material change in circumstances affecting the child's best interest. *McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91. The factors a trial court may consider in determining what is in the best interest of the children

include the psychological relationship between the parents and children, the need for stability and continuity in the relationship between parents and children, the past conduct of the parents toward the children, and the reasonable preference of the children. *Rector v. Rector*, 58 Ark. App. 132, 947 S.W.2d 389 (1997). On appeal, we perform a de novo review, but we will not reverse unless the findings are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003); *Ross v. Ross*, 2010 Ark. App. 497, 2010 WL 2404168. This necessarily turns in large part upon credibility determinations, and we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the children's best interest. *Sharp v. Keeler*, 99 Ark.App. 42, 256 S.W.3d 528 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving children. *Keith v. Keith*, 2013 Ark. App. 700, 430 S.W.3d 845, *Judkins v. Duvall*, 97 Ark. App. 260, 248 S.W.3d 492 (2007).

We first dispose of Bob's procedural-bar arguments, wherein Bob argues that the trial court was precluded from entertaining Lisa's motion because custody and visitation had already been the subject of litigation. The doctrine of res judicata is not strictly applicable in child-custody matters, *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002). Our supreme court favors a more flexible approach to res judicata in these settings to allow a trial court to respond to asserted changes in circumstances and the best interest of the child. *Id.; see also Hanna v. Hanna*, 2010 Ark. App. 58, 377 S.W.3d 275. The trial court's retention of jurisdiction over child-custody and visitation matters, and the requirement of a showing of materially changed circumstances, support the logic behind a more flexible approach in child

custody and visitation cases. *Chiolak v. Chiolak*, 99 Ark.App. 277, 259 S.W.3d 466 (2007). Bob's arguments concerning collateral estoppel and law of the case are likewise not strictly applicable to this litigation for the same reason. *See id.* We hold that the court did not err in denying Bob's motion to dismiss. *See also Atkinson v. Ledbetter*, 2014 Ark. App. 245, 2014 WL 1661503 (explaining the doctrine of continuing jurisdiction specifically as it relates to child custody matters).

Moving to the substantive arguments, we first address the modification of the exercise of summer visitation. We affirm on this point because Lisa established material changes in the circumstances related to JB's educational and emotional needs, and because the trial court did not clearly err in deciding that JB's best interest was served with this alteration in the timing of Bob's visitation periods.

As we have explained, JB is a severely autistic non-verbal teenager. Bob is an actively involved parent, but Lisa is the primary caregiver. JB requires specialized education and structure in his daily life. Since the parties' divorce, JB became a student at Pathfinder Academy, which changed from a typical school year to a year-round educational setting. Psychological professionals and special-education professionals testified that autistic children need the least amount of disruption in their schedules, that JB in particular had that need, and that there were signs of anxiety and regression when extended visitation was about to commence or had just ended. Lisa added that JB behaved more appropriately and settled back into his educational environment when he was out of her custody for shorter periods of time. Bob resisted any changes to the previously-ordered schedule, but we find it impor-

tant to note that at the conclusion of the hearing, his attorney stated to the trial judge that Bob was agreeable to a "week on week off" schedule.

We are hard pressed to find clear error when the alteration in the schedule did not *deprive* Bob of time with his son but only *reallocated* that time, and further, Bob appeared to manifest assent to this change in the end. We hold that the trial court's decision on this point is not clearly erroneous and is compatible with JB's best interest. *Compare Maley v. Cauley,* 2010 Ark. App. 850, 378 S.W.3d 808 (affirming a trial court's slight alteration in appellant's visitation schedule compatible with child's educational needs and best interest).

██ Bob's primary argument focuses on the trial court's removal of the "no traveling" provision. Bob contends that Lisa has failed to show a material change in circumstances sufficient to modify the prior order on this topic, and that the trial court failed to explain what those changed circumstances were. We disagree that the trial court clearly erred.

Bob correctly states that Arkansas law has historically prohibited, as a matter of public policy, children being exposed to a parent's unmarried cohabitation or a parent's promiscuous conduct or lifestyle. *E.g., Taylor v. Taylor,* 345 Ark. 300, 47 S.W.3d 222 (2001). There is some question whether that stated policy has been relaxed as far as unmarried cohabitation is concerned, *see Moix v. Moix,* 2013 Ark. 478, 430 S.W.3d 680; however, we need not reach that issue. Here, the trial court did not lift the prohibition against unmarried cohabitation; nor did the court lift the prohibition of a romantic partner being an "overnight guest" of a party. Lisa did not appeal the continuation of those prohibitions. On the issue of traveling, the trial court simply determined that Lisa's relationship with Mary Alice was not illegal or illicit such that "regarding JB, the Court orders that until he reaches his majority, Mary Alice Hughes may go on vacations with the plaintiff and her family, but she must sleep in a separate apartment or accommodations."

Bob asserts that the trial court erred by failing to provide specific findings of fact on the issue of "materially changed circumstances." We disagree because even if the trial court had failed to provide specifically enumerated material changes in circumstances, we would be permitted on de novo review to determine that there is evidence from which such changes can be found. *Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999); *Chaffin v. Chaffin,* 2011 Ark. App. 293, 2011 WL 1496000.

We hold that the evidence here established material changes because over time Mary Alice Hughes had become an integral part of JB's daily care routine including feeding, dressing, transportation, educational support, and emotional comfort. Moreover, EB's emancipation and move from Lisa and JB's residence to college in Texas significantly reduced Lisa's small pool of available, consistent, and loving caregivers to help with JB. This evidence supported the existence of a material change in circumstances sufficient to remove the prohibition of Mary Alice Hughes being present, other than overnight, during travel with Lisa and JB. We cannot determine that the trial court was clearly erroneous to decide as it did on this issue. Nor can we conclude that this modification was not in JB's best interest, acknowledging JB's best interest could be served only by continuity in his daily routine and availability of his caregiving team.

██ The trial court retains the authority to protect the child's best interest, and there is no case in which greater deference should be given to the trial court's posi-

**14**

tion, ability, and opportunity to see and evaluate the evidence than those involving the welfare and best interest of minor children. *Faulkner v. Faulkner,* 2013 Ark. App. 277, 2013 WL 1857687. In our de novo review of the evidence presented to the trial court, we are not left with a distinct and firm impression that a mistake was made in the trial court's removal of this restrictive condition.

|13Lastly, Bob contends that we should hold him entitled to petition for attorney fees and costs in pursuing this appeal, under the authority given by Ark. Sup.Ct. R. 6–7(c) (2013). We decline to so hold. He asserts foremost that he should prevail on appeal, which would support such an award. Having affirmed the appeal, this moots his argument. Regardless, Bob is free to file any petition he may choose with our court or with the circuit court, and the merits or lack thereof will be decided upon the appropriate petition.

■ Moving to Lisa's cross-appeal. In the first appeal, our court agreed with Bob's argument that he had been deprived of his marital half of the value of Lisa's gift-store inventory, his part being $9000. Although Lisa purportedly tendered a check to pay what she owed Bob, it was not for the full amount of $9000. The parties disagreed over whether this check constituted the correct amount. Bob did not cash the check, allowing it to become "stale." At the hearing on the most recent competing motions, Bob asked that Lisa be ordered to reissue a check and remit the $9000 payment to Bob. The trial court agreed and ordered Lisa to remit the $9000 in a March 2013 order, which Lisa cross-appealed. She contends that it was error for the trial court to do so. We disagree.

Lisa does not, and cannot, argue that she does not owe Bob $9000 as delineated in our prior opinion. The trial court was

well within its authority to order her to pay this amount to Bob. Her argument to the contrary is without merit, is not supported by any convincing legal authority or argument, and we reject it.

Affirmed on direct appeal and on cross-appeal.

GLADWIN, C.J., and GLOVER, J., agree.