Cite as 2021 Ark. App. 448

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-20-736

| | | |
|---|---|---|
| TULLY BORLAND | APPELLANT | **Opinion Delivered** November 17, 2021 |
| V. | | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10DR-20-101] |
| AMY BORLAND | APPELLEE | HONORABLE RANDY HILL, DISTRICT JUDGE |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Tully Borland appeals an order of protection[1] entered in favor of Amy Borland for the term of one year. On appeal, Tully argues that the district court lacked subject-matter jurisdiction to issue an order of protection; that the issues before the court are not and will never be moot;[2] the court erred in finding there was proof of imminent harm; and the court abused its discretion in rejecting the parties' settlement agreement. We affirm.

On July 23, 2020, Amy Borland filed a petition for an order of protection, which was assigned to the Clark County District Court judge. At the time Amy filed her petition,

---

[1]A district court judge issued the order of protection. Protective orders may be referred to a state district court judge. Ark. Sup. Ct. Admin. Order No. 18(6)(b)(2); *see also Smith v. Murphy*, 2017 Ark. App. 188, 517 S.W.3d 453.

[2]Although the order of protection expired on September 25, 2021, this appeal is not mooted by the order's expiration. *See Poland v. Poland*, 2017 Ark. App. 178, 518 S.W.3d 98. Neither party contends the mootness issue, though Tully spends several pages on it in his brief.

a divorce case between the parties was pending in the Clark County Circuit Court. In her sworn petition for an order of protection, Amy described Tully's physical abuse. She specifically noted that Tully physically restrained her, attempted to cast a demon out of her, and stated his intention to perform an exorcism on her. Further, Amy recounted Tully's attempts to prevent her from escaping or getting help by taking her car keys, disabling and blocking her vehicle, ordering their daughter to destroy Amy's phone, and preventing their son from running to the neighbors' house for help.

On July 23, 2020, the court issued an ex parte order of protection against Tully and in favor of Amy and the parties' five children. Within a couple of days of the entry of the ex parte order of protection, Tully was arrested for violating the order of protection; he ultimately pled guilty to the criminal charge of violating an order of protection. A final hearing on Amy's petition for an order of protection was set for September 25, 2020. On the morning of September 25, in the parties' divorce case, the circuit court signed and filed the parties' agreed temporary order memorializing their agreement regarding temporary custody and visitation, among other issues.

On that same day, at the hearing on the final order of protection, Amy's attorney advised the court that the parties had filed their temporary agreed order in the divorce case that morning and stated to the court that the parties had reached an agreement as to the disposition of the order-of-protection case and that they were going to ask the court to approve it. Amy testified that she was requesting that the court drop the parties' children from the order of protection and continue the order of protection only as to her until February 2021.

However, Amy also testified to the events that led her to file her petition for an order of protection, including not only that Tully had tried to prevent her from escaping from the home but also that Tully had physically assaulted and physically restrained her by pinning her against the upstairs deck railing of their home, and that after she broke away from him, she ran to her neighbors' house and asked them to call 911 for her. The district court dropped the children from the order of protection—specifically deferring to the jurisdiction of the circuit court regarding the issue of visitation—but entered a final order of protection as to Amy for a period of one year. Tully timely appeals the final order of protection.

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.* We review issues of statutory interpretation de novo. *Claver v. Wilbur*, 102 Ark. App. 53, 280 S.W.3d 570 (2008).

On appeal, Tully contends that the fact that the parties' divorce case was pending in the Clark County Circuit Court when Amy filed her petition for an order of protection in the Clark County District Court divests the district court of subject-matter jurisdiction over the order-of-protection case. In making his argument, he acknowledges that pursuant to the Domestic Abuse Act of 1991, Arkansas Code Annotated section 9-15-201(f) (Repl. 2020), a petition for an order of protection may be filed regardless of whether there is any pending

litigation between the parties but argues that under *Clark v. Hendrix*, 84 Ark. App. 106, 134 S.W.3d 551 (2003), a court should refrain from exercising its jurisdiction over a petition for a protective order when a party's right to visitation is at issue in an ongoing divorce proceeding. His reliance on *Clark* is misplaced in this case.

In *Chiolak v. Chiolak*, 99 Ark. App. 277, 259 S.W.3d 466 (2007), our court summarized the *Clark* decision:

> In *Clark*, there was an ongoing proceeding in a Pulaski County Circuit Court concerning a visitation dispute between the parties. In addition, the Pulaski County court had available to it the same testimony concerning an alleged abuse incident that occurred in White County. The White County Circuit Court assumed jurisdiction over the matter despite being on notice that the Pulaski County court had either dealt with the specific matter or was in the process of dealing with it. We held that the White County Circuit Court should have refrained from exercising its jurisdiction as a matter of comity because the protective order that it entered dealt primarily with the issue of whether appellant could exercise his right to visitation for another year, which directly affected a valid and ongoing visitation order from the Pulaski County Circuit Court.

99 Ark. App. at 280, 259 S.W.3d at 468.

In the case at bar, the district court's order of protection did not overlap or conflict with any issues in the divorce case. The district court agreed to the parties' request to drop their minor children from the order of protection, and the final order of protection did not address issues of custody or visitation. None of the provisions of the district court's final order of protection conflicted with the agreed temporary order or any other order in the divorce case. Accordingly, the circumstances of the instant case are distinguishable from those presented in *Clark*, *supra*, and we hold that there was no error in the court's exercise of jurisdiction under the circumstances presented here.

Tully also argues that Amy did not prove "imminent harm in the future" and that without such proof, the district court's entry of a final order of protection must be reversed. First, Tully misstates the applicable statute. Arkansas Code Annotated section 9-15-206(a) pertains to temporary orders—not final orders of protection, and it is the final order of protection from which Tully appeals. Even if Tully was also appealing the entry of the temporary order of protection, there was a sufficient basis for the district court to issue a temporary order of protection.

Amy's sworn statement that Tully physically assaulted her and restrained her, prevented her from leaving the house to get help, attempted to cast a demon out of her, and told her that he intended to perform an exorcism on her easily satisfies the requirement that the petition allege an immediate and present danger of domestic abuse before a temporary order of protection is issued. At the September 25 hearing, Amy testified that Tully pinned her against the upstairs deck railing of their home and that she ran to her neighbors' house to call 911. As such, the district court had evidence that Tully assaulted Amy and inflicted fear of imminent physical harm, bodily injury, or assault and thus committed domestic abuse. "Imminent" means "'likely to occur at any moment' or 'impending' at the time of the alleged abuse, not at the time of filing the petition for a protective order." *Simmons v. Dixon*, 96 Ark. App. 260, 265, 240 S.W.3d 608, 611 (2006).

Amy's testimony was undisputed. Tully did not testify, call any witnesses, or even cross-examine Amy. In addition to Amy's testimony of Tully's conduct that amounted to domestic abuse within the meaning of Arkansas Code Annotated section 9-15-103(4), at the time of the hearing on the final order of protection, Tully had violated the ex parte

order of protection and pled guilty to the criminal charge of violating the ex parte order of protection. Therefore, the district court had a sufficient basis for entering the final order of protection.

Tully's final argument on appeal is that the district court abused its discretion by rejecting the parties' settlement agreement and entering a final order of protection instead. Amy and Tully had reached an agreement to dismiss their children from the order of protection and to continue the order of protection as to Amy for five more months. The district court acted within its authority to reject the parties' agreement. While the parties are bound by an oral stipulation, the court is not bound by a stipulation entered into by the parties; rather, it is within the sound discretion of the court to approve, disapprove, or modify the agreement. *Rutherford v. Rutherford*, 81 Ark. App. 122, 128–29, 98 S.W.3d 842, 845 (2003); *see also McCue v. McCue*, 210 Ark. 826, 832, 197 S.W.2d 938, 941 (1946) ("Certainly the court is not bound by an agreement that a disputing husband and wife may enter into in order to terminate a controversy, and this is true even in the absence of fraud or coercion."). Here, the court was well within its discretion to reject the settlement between the parties because it has authority to accept, reject, or modify a settlement agreed to by the parties. Accordingly, we affirm.

Affirmed.

BARRETT and WHITEAKER, JJ., agree.

*Stayton & Associates, P.A.*, by: *Rowe Stayton*, for appellant.

*The Bennington Law Firm, Inc.*, by: *Madeline L. Bennington*, for appellee.