Cite as 2025 Ark. App. 471

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-524

| | | |
|---|---|---|
| NEIL KITCHENS | | Opinion Delivered October 8, 2025 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-24-321] |
| V. | | |
| KAY WHISENHUNT | | HONORABLE SHAWN J. JOHNSON, JUDGE |
| | APPELLEE | |
| | | REVERSED AND DISMISSED |

**CASEY R. TUCKER, Judge**

On February 2, 2024, appellee Kay Whisenhunt filed a petition for an order of protection against appellant Neil Kitchens in the Pulaski County Circuit Court. The circuit court declined to enter an ex parte order of protection but rather issued a notice of hearing for March 5, 2024.[1] Following the final hearing, the circuit court entered a final order of protection for two years against Kitchens. On May 30, 2024, Kitchens filed a timely notice of appeal.

Kitchens's arguments on appeal are the circuit court erred in: (1) not dismissing the petition for an order of protection for failure to allege "domestic abuse;" (2) granting a final order of protection based on purported "course of control" and/or "disturbing the peace"

---

[1]An amended notice of hearing was entered setting the final hearing for May 2, 2024.

rather than any actual act of domestic abuse; and 3) finding domestic abuse. We reverse and dismiss the final order of protection entered against Kitchens.

I. *History and Trial Facts*

Whisenhunt's petition for order of protection alleged that Kitchens threatened physical harm by (1) sending emails to Whisenhunt stating he would make her "pay" for what she had done and to other family members threatening revenge since 2022; (2) showing up at her home trying to get into two gates without revealing his identity; and (3) mailing her photographs with handwritten notes.

Kitchens filed a response in opposition and an affidavit stating he did not commit domestic abuse, detailing a fractious history between him and extended family, and accusing Whisenhunt of ruining his life. In Kitchens's response, he defended his actions as described by Whisenhunt.

At the May 2 hearing, Whisenhunt testified that she and Kitchens, who are siblings, had not seen each other since 2019. Whisenhunt testified that she was afraid Kitchens would physically harm her, but she admitted he had never been violent toward her. She stated that she, her husband, and her sister assisted her mother in a lawsuit against Kitchens. Sometime after that lawsuit, Kitchens breached the first security gate of her neighborhood, took pictures, and left presents and a note outside the main gate to her home in late 2023 when she was out of town. She testified that she had not felt safe in her home since that incident, and now she stays in her home only when her husband is present. She testified that she filed three police reports and has upgraded her security system. Whisenhunt stated that Kitchens

had sent various emails with threats to extort money, but she did not introduce them as exhibits. She stated that Kitchens has an alias and has pled guilty to fraud in the past.

The following colloquy then took place:

COURT: And then from there, you're saying that you have continued to be as the statutes says infliction, you feel as if you have felt the infliction of fear of imminent physical harm.

[WHISENHUNT]: Yes, sir.

COURT: How?

[WHISENHUNT]: My life has changed. When [Kitchens] and his wife showed up unannounced at, they somehow got through the first gate, I live in the second gate, they couldn't get through that one, and incidentally, I wasn't even home, I was out of town for this Thanksgiving holiday, but I came home, and I did find his packet, that they had been there, and it did have wine and candy in it. That scared me so bad.

COURT: Why would he leave presents for you if you know? I mean if everything had gone in 2019 as you indicated, why, why would he leave a gift? Any idea?

[WHISENHUNT]: To get us to sit down and give him money. We really believe extortion is the whole thing.

The court continued to ask what Kitchens has that he is "holding over" Whisenhunt. She responded, "[T]he threat as he writes in there of revealing even more embarrassing information if I don't." Whisenhunt referred to emails during her testimony, but they were not read into the record or admitted as exhibits.

3

Kitchens, who is a resident of Washington State, testified that he has never abused or threatened Whisenhunt, except with lawsuits. He stated that he wanted to meet with her about the lawsuits. He wanted a written retraction and an apology that he was "never stealing" from their mother. He testified that he was aware of only one police report, not the three she reported. Kitchens testified that he tried to run for state senate in Washington, but Whisenhunt reported him to the DA, and he pled guilty to one count of knowingly living outside the district. He was questioned regarding a photograph of his stepdaughter, her friends, and him flipping off Whisenhunt—this photograph was not admitted. Kitchens reiterated he is not a threat as far as physical violence—he has never touched her.

Following the conclusion of testimony and presentation of evidence, the court orally ruled that it found applicable the "course of control" definition in Ark. Code Ann. § 9-15-219 (Supp. 2023), which includes "disturbing of the peace," to enjoin Kitchens from having contact with Whisenhunt for two years. The court stated that "[u]nder Ark. Code Ann. § 9-15-219 Kitchens's behavior constitutes a disturbing of the peace."[2] In its oral ruling, the court stated, "It's a pattern of communications, the sending of communications by mail, the showing up at home unannounced, the moving into an interior gate when it's a two-gate system, and these are unwanted contacts." The court described Whisenhunt as "worried and concerned," not in imminent fear of physical or bodily harm.

---

[2]Disturbing the peace under Ark. Code Ann. § 9-15-219 is "a pattern of behavior that unreasonably destroys the mental or emotional calm of the family or household members based upon the totality of the circumstances."

4

On May 2, 2024, the court issued its order styled "Final Order of Protection," which states that the "victim(s) is (are) in immediate and present danger of domestic abuse and therefore an Order of Protection is hereby granted pursuant to the terms herein."

## II. *Standard of Review*

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Borland v. Borland*, 2021 Ark. App. 448, at 3, 638 S.W.3d 308, 311. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of witness credibility are within the province of the fact-finder. *Id.* We review issues of statutory interpretation de novo. *Hocut v. Hocut*, 2022 Ark. App. 452, 655 S.W.3d 527.

## III. *Analysis*

Kitchens argues that the circuit court's order must be reversed and dismissed because the petition did not allege a purported act of domestic abuse.[3] Whisenhunt pled in the petition for an ex parte order of protection that certain acts made her fearful of harm, which does not rise to the requisite standard for a temporary or "ex parte" order of protection pursuant to Ark. Code Ann. § 9-15-206, which is defined as a petitioner's allegation of

---

[3]Arkansas Code Annotated section 9-15-103(4) states, "'Domestic abuse' means: (A) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family member or household members."

"immediate and present danger of domestic abuse." Kitchens's argument is without merit because the court did not find that Whisenhunt was in fear of immediate and present danger when she filed the petition, which is a requirement for the entry of an ex parte order of protection. Furthermore, there is no error because the court held a hearing on the merits of the petition within thirty days from the date on which the petition was filed or at the next court date, as required by Ark. Code Ann. § 9-15-204 (Supp. 2023).

Kitchens next argues that the court committed legal error by granting an order of protection on the basis of purported course of control and/or disturbing the peace rather than any act of domestic abuse. While the court orally ruled that Kitchens had disturbed the peace and that his actions fell under the course-of-control definitions under Ark. Code Ann. § 9-15-219, the court entered a final order of protection declaring a finding of domestic abuse under Ark. Code Ann. § 9-15-103(4)(A). An oral order announced from the bench does not become effective until reduced to writing and filed. Ark. Sup. Ct. Admin. Order No. 2; *Ballegeer v. Ballegeer*, 2021 Ark. App. 390.

We next address whether there was sufficient evidence to support a finding of domestic abuse regardless of the circuit court's oral reference to section 9-15-219 as the basis for issuing an order of protection. If an order of protection is granted without sufficient evidence to support the finding of domestic abuse, the order will be reversed. *See Paschal v. Paschal*, 2010 Ark. App. 515, at 7. When there is no evidence that the respondent committed physical abuse or inflicted fear of imminent physical harm, bodily injury, or assault, it is an abuse of discretion to issue the order of protection. *Wilhite v. Wilhite*, 2024 Ark. App. 147.

6

The legislative definition of "domestic abuse" as must be shown to obtain an order of protection does not include the terms "harassing" and "controlling." *Hocut v. Hocut*, 2022 Ark. App. 452, 655 S.W.3d 527.

The evidence in this case clearly did not support a finding of domestic abuse. Admittedly, Whisenhunt had not seen Kitchens since 2019. She declared fear after he left wine, candy and a note outside her gate in 2022 that read:



The judge weighed the credibility of these witnesses and despite statements of fear, the judge did not find that Whisenhunt was fearful of physical harm. In fact, the court used the "disturbing the peace" finding and found Whisenhunt to be "worried and concerned" but not fearful of physical or bodily harm. Upon the court's inquiry as to what her fear was, Whisenhunt declared she was concerned about the threat of extortion and revelation of embarrassing information. There was not sufficient evidence to support the court's finding of domestic abuse in this matter. Thus, we must reverse the court's entry of a final order of protection against Kitchens.

Reversed and dismissed.

HARRISON and MURPHY, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*James, House, Swann & Downing, P.A.*, by: *William JW James* and *Brandon C. Cathey* for appellee.