SLIP OPINION



Cite as 2015 Ark. App. 584

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-15-312

| | |
|---|---|
| SUNGKA VONGKHAMCHANH<br>APPELLANT<br><br>V.<br><br>ALICIA VONGKHAMCHANH<br>APPELLEE | **Opinion Delivered** October 21, 2015<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. DR-14-1238]<br><br>HONORABLE CRISTI BEAUMONT, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

This case involves a custody dispute between appellant, Sungka Vongkhamchanh, and his ex-wife, appellee, Alicia Vongkhamchanh, over their two children. The parties were divorced by a decree entered on February 6, 2015, which awarded primary custody of the children to appellee and standard visitation to appellant. Appellant contends that the trial court erred in using his military status as the basis for denying him custody and in awarding him standard visitation in "flagrant disregard" of its incompatibility with his active military status. We hold that the trial court did not clearly err, and we affirm its decision.

The parties were married in 2011. Appellee filed a complaint for divorce on July 22, 2014, and appellant filed an answer on August 18, 2014. At the time of the divorce hearing in January 2015, their children were ages three and five. Appellant testified that he was employed by the United States Air Force and had been with the air force for four years at the time of the hearing. Although the parties met while in high school in Arkansas, the

SLIP OPINION

family lived together for most of their marriage in Great Falls, Montana, where appellant was stationed. The parties separated in late 2013, when appellee left Montana with the children and moved in with her parents in Arkansas.

Appellee testified that, when they lived in Montana, she had stayed at home and been the primary caretaker of the children and that appellant had done very little interacting with them, even when he was home. She testified that, at the time of trial, she was living with her parents in Fayetteville and working at a newspaper factory in Lowell from 1:30 p.m. to 9:30 p.m. each day. She was planning to become a machine operator, which would pay more. She testified that her brother was a supervisor where she worked and that she could change her shift as needed so that she or her parents were available to take care of the children. She also planned to get an apartment with her increased income and child support, if support were awarded. She testified that her children generally awoke at 7:00 a.m., ate breakfast, and then spent time outside until she put them down for a nap while she prepared to go to work.

On cross-examination, appellee admitted that she had been arrested for and pleaded guilty to DWI in June 2014. She said that the children were not in the car with her at the time, that she no longer drank alcohol, and that she had not been arrested for any alcohol or drug-related offenses since that time. She also testified that she was in a new relationship and pregnant at the time of the hearing.

Appellee's mother and stepfather testified that the parties' relationship was volatile and that they argued regularly about appellant's lack of involvement in the children's life. Both testified that appellant's interaction with the children was very limited and that appellee had

always been there for the children. Both also opined that it was in the best interest of the children to remain with appellee.

Appellant testified that his work hours were from 3:00 p.m. to 11:00 p.m. Saturday through Thursday but that he would change those hours if he were granted custody. He said that he currently lived in a two-bedroom apartment and that he was on a waiting list for a three- or four-bedroom house on base. He testified that he accumulated two-and-a-half days of leave per month; however, he did not visit the children after they left Montana in December 2013 until August 2014, when he took three weeks' leave to spend in Arkansas with his family. He saw the children only three or four days during that time. He testified that he asked appellee "a couple of times" during those three weeks to see them but appellee had told him "her parents had them." When the court asked appellant why he did not file "something" with the court to set up visitation, he said he was not aware that he could. He testified that he would be deployed overseas for only six months every three years and that, if he were awarded custody, his sisters or his mom, who all lived in Arkansas, could watch the children while he was deployed. Although appellant testified that appellee was a "good mom," he said that he could "give them a better education, properly finance them," and he had "contingency plans" for them in case anything happened.

Appellant's sister testified that the parties had a very rocky relationship, that there was always miscommunication between them, and that, when the parties were together, appellant had worked full-time and appellee had stayed home with the children. She said that appellant was very good with the children and always tried to instill education and discipline. She

testified that, in her opinion, it was in the best interest of the children to be with appellant because of the instability she had witnessed when the parties were together. She said that appellant did not allow "certain things to affect him emotionally" the way appellee did.

The court found that it was in the best interest of the children for appellee to be awarded custody, giving several reasons for its decision. First, the court said that appellee had been the primary custodian of the children, and it did not want to remove them from the home they had known all of their lives. The court said that it appreciated appellant's military service and found it "admirable" but noted that it did not put him in the best position to provide the safest environment for the children and that it had, unfortunately, put him in a situation where the children did not know him as well as they knew appellee. The court found that the most "stable environment" for the children at that time was with appellee. The court also awarded standard visitation to appellant with one Skype or phone visitation per week. The court's order, entered on February 6, 2015, reflected its oral pronouncement, finding that it was in the best interest of the children for primary custody to be awarded to appellee with appellant having standard visitation. The court also stated that visitation could be adjusted "by mutual agreement of the parties to accommodate the Defendant's service in the United States Air Force."

For his first point on appeal, appellant contends that the trial court erred when it used his military status as the basis for denying him custody. We review child-custody cases de novo, but we will not reverse a trial court's findings unless they are clearly erroneous. *Grantham v. Lucas*, 2011 Ark. App. 491, at 4, 385 S.W.3d 337, 340. Because the question of

4

whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 44, 256 S.W.3d 528, 529 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *Horton v. Parrish*, 2015 Ark. App. 306, at 10, 461 S.W.3d 718, 724.

Appellant's argument specifically relies on Arkansas Code Annotated section 9-13-110(b), which forbids a court from "permanently modify[ing]" an order for child custody or visitation "solely" on the basis that one of the parents is a "mobilized" parent. Ark. Code Ann. § 9-13-110(b) (Repl. 2009). In such a case, the court must determine whether a temporary modification is appropriate and, in making that determination, consider "any and all circumstances that are necessary to maximize the mobilized parent's time and contact with his or her child that is consistent with the best interest of the child." Ark. Code Ann. § 9-13-110(c)(1) & (2). The statute then lists certain factors for the court to consider. Ark. Code Ann. § 9-13-110(c)(2). Although appellant admits that the statute does not apply here because the court was not modifying an order but entering an initial custody order and appellant was not, at the time of the hearing, being "mobilized," he argues that the trial court should have incorporated the spirit of the statute in this case. Appellant did not make this argument or even mention this statute to the trial court. Therefore, whatever the statute's tangential relevance to this case, it is elementary that we will not consider arguments that are not first raised in the trial court. *Stacks v. Stacks*, 2009 Ark. App. 862, at 4, 377 S.W.3d 265,

5

269. Otherwise, we would be placed in the position of reversing a trial court for reasons not addressed by that court. *Id*. This argument is not preserved for our review.

We now turn to appellant's characterization of the trial court's ruling. Appellant has misstated the basis for the court's award of custody to appellee. The court stated that appellee had been the primary caretaker of the children and that it did not want to remove them from her. The court said that it appreciated appellant's military service but stated that it did not put him in the best position to provide the safest environment for the children and that it had, unfortunately, put him in a situation where the children did not know him as well as they knew appellee. The court found that the most "stable environment" for the children at the time was with appellee. The trial court did not, as appellant argues, deny custody to him based on his military status. Rather, the court very specifically awarded custody to appellee based on the best interest of the children. One factor it considered in making its decision was the limited time appellant had spent with the children in part because of his job. We hold that the trial court's finding that it was in the children's best interest to remain in the custody of appellee was not clearly erroneous.

For his second point on appeal, appellant argues that the trial court erred in awarding him standard visitation in "flagrant disregard" of its incompatibility with his active military status and against the best interest of the children. The court's order awarded "visitation in accordance with the Washington County Standard Visitation schedule" but also stated that appellant's visitation could be adjusted "by mutual agreement of the parties to accommodate [appellant's] service in the United States Air Force." We review visitation de novo and will

not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Bowen v. Bowen*, 2012 Ark. App. 403, at 2, 421 S.W.3d 339, 341. The main consideration for the court in awarding visitation is the best interest of the child. *Favano v. Elliott*, 2012 Ark. App. 484, at 8, 422 S.W.3d 162, 166. Fixing visitation rights is a matter that lies within the sound discretion of the trial court. *Baber v. Baber*, 2011 Ark. 40, at 10, 378 S.W.3d 699, 705.

Appellant contends that, in awarding standard visitation, the trial court did not give any consideration to the unique circumstance of his being in the military nor did it consider the distance he would be required to travel to exercise his visitation. He argues that the court's failure to consider these unique circumstances constitutes reversible error. First, we are left to speculate about the substance of the Washington County Standard Visitation schedule because appellant did not provide any details about this schedule. Moreover, the schedule is not in the record or the addendum. Secondly, appellant failed to provide any alternative visitation schedule to the trial court. The record is devoid of any testimony by appellant establishing a workable visitation schedule or any argument or pleading by appellant's lawyer for any alternative to the standard visitation. Indeed, neither appellant nor his attorney mentioned future visitation or the difficulty that an order of standard visitation might present. Absent any evidence or argument to support a more workable visitation schedule, we hold that the court did not abuse its discretion by failing to create such a schedule out of whole cloth.

Affirmed.



KINARD and HIXSON, JJ., agree.

*Kevin Hickey Law Firm*, by: *Kevin L. Hickey*, for appellant.

*Wayne Williams Law Office, PLLC*, by: *Wayne Williams*, for appellee.