Cite as 2019 Ark. App. 562

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-19-6

|  |  |  |
|---|---|---|
| MICHAEL DELINE | APPELLANT | **OPINION DELIVERED:** DECEMBER 4, 2019 |
| V. |  | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BDR-17-189] |
| JAIME DELINE | APPELLEE | HONORABLE RANDY F. PHILHOURS, JUDGE |
|  |  | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Michael Deline appeals his divorce decree in the Mississippi County Circuit Court, arguing in five points that the trial court erred by (1) denying his motion for continuance; (2) restricting his visitation rights; (3) setting child support; (4) awarding spousal support to appellee Jaime Deline; and (5) awarding attorney's fees to Jaime. We affirm.

### I. *Facts and Procedural History*

The parties were married on June 25, 2009, and they have one daughter, EA, who was born later the same year. Jaime filed a complaint for divorce on July 11, 2017, seeking sole custody of EA, restricted visitation rights for Michael, child support, spousal support, and certain property. On July 18, Michael answered and counterclaimed for divorce, custody, and child support, and he alleged that Jaime had wrongfully obtained an ex parte

order of protection against him and that he had not had visitation since that time.[1] By separate order, an attorney ad litem was appointed to represent EA.

A temporary hearing was held August 4, and the resulting order was filed October 13. In the order, Jaime was awarded temporary custody subject to Michael's visitation every other weekend on Saturday and Sunday from 9:00 a.m. until 8:00 p.m. Child support ($691 a month or $160 a week) and spousal support ($1,114.89 a month or $257.48 a week) were awarded to Jaime based on Michael's monthly income of $5,000. The parties were enjoined from discussing "this matter" with EA and from making any disparaging remarks about the other in EA's presence. Further, they were enjoined from "post[ing] or otherwise display[ing] any information about this matter by way of social media. [Michael] shall remove any content regarding [Jaime] or [her] son, Douglas, previously posted or otherwise displayed by way of social media." Michael was also ordered to remove Jaime's cellular phone from his "service" as soon as possible.

Michael moved to modify the order on October 11, alleging that the child-support and spousal-support obligations were ordered when he was employed by his mother's temporary-employment agency and by his father's farming operation. He alleged that he no longer worked for either parent and that he could not find a job. He asked that both his support obligations be reduced.

A hearing was held on April 24, 2018, and the trial court found Michael in contempt for violating its previous orders.[2] He was given a suspended thirty-day sentence based on

---

[1] The restraining order mentioned here is not part of the divorce case.

[2] The order from the April 24 hearing was not filed until June 18, 2018.

2

his future compliance with the court's orders. The trial court reinstated Michael's visitation;[3] ordered Michael to remove all firearms and other weapons while EA was present for visitation; and did not prohibit Michael from photographing or videotaping EA "in the ordinary course of being a parent" but prohibited him from posting any "photos, videos, audio or any other matter, involving the minor child, the parties, the attorneys, the Court, or anything having to do with this matter" on social media. The trial court warned that a violation could result in the immediate revocation of Michael's visitation until a further hearing. The trial court also ordered that assuming Michael complied with the court's orders, his visitation would be increased to one day a week beginning June 1, 2018. Jaime was granted judgment of $2,178 for unpaid child support and $9,526.76 for unpaid spousal support. Michael was ordered to comply with orders and "keep current" his support obligations. Michael was also ordered to enroll in an anger-management program and to comply with any recommendations.

The trial court issued a letter file-marked on June 28, 2018. In it, the trial court acknowledged receipt of a June 20, 2018 letter from the attorney ad litem that had caused the court to be "greatly disturbed." As a result of the allegations in the ad litem's letter, the trial court terminated all visitation between Michael and EA until a hearing could be held. The trial court also stated that it would "certainly entertain another contempt matter against [Michael], which would be heard during the hearing on the merits, which addresses his

---

[3]Michael's visitation had been discontinued by the attorney ad litem based on her contempt allegations, which led to the April 24 hearing.

violation of a very explicit court order by way of him discussing this case with the minor child."

Jaime filed a contempt petition on July 12 alleging that Michael was late in paying child support and that he refused to pay spousal support. She also alleged that he was in violation of the trial court's order enjoining them from disposing of their property because he had spent thousands of dollars on trips, airfare, donations, memorabilia, and furniture. She asked that he be ordered to cease his extravagant spending and to account for his expenses. She also alleged that he had violated the court's order by discussing the divorce with EA, making disparaging remarks about Jaime, and posting information about their divorce on social media. She asked that Michael's visitation be supervised, that his suspended sentence be reinstated, and that he be held in contempt.

The attorney ad litem also filed a contempt petition on July 19. This petition alleged that since the April 24, 2018 hearing, Michael refused to abide by the trial court's rulings. She alleged that he had continued to discuss the case with EA and that he had continued to post inflammatory statements about the attorney ad litem on social media, suggesting that the ad litem takes money in return for fixing the outcomes of cases. She asked that he be held in contempt and that his suspended thirty-day sentence be revoked.

The final hearing took place on July 25 and 26, 2018; however, Michael did not appear on the second day of trial. His attorney appeared and asked for a continuance because Michael had reported to him that he nearly "blacked out" while driving to court that morning due to high blood pressure and that he had gone to the hospital in Paragould. The trial court denied the motion and stated that it was skeptical of Michael's inability to be in

4

court and that the court's bailiffs had predicted that Michael would use his alleged blood-pressure issues to evade being in court.

Following the final hearing, Michael moved on August 2 for the trial court to reconsider his motion for continuance, arguing that he had experienced high blood pressure and physical symptoms on the first day of the hearing, and on the second day, he had a "near syncope" event on his way to court, causing him to almost crash his vehicle. He claimed that rather than drive on to Blytheville, he drove himself to the emergency room in Paragould, where he was treated for high blood pressure. He attached medical records to his motion and asked the trial court to reconsider its ruling and withhold its final ruling until he could testify. The trial court did not rule on Michael's motion for reconsideration.

The parties' divorce decree was filed September 6, 2018, and it grants Jaime a divorce and custody of EA. Michael's visitation is reinstated but limited to Saturday and Sunday, once a month, from 10:00 a.m. until 6:00 p.m. He is also given some limited holiday visitation. The trial court ordered that Michael's visitation would remain in place "unless and until he petitioned for it to be otherwise and unless Michael and EA participate in family therapy" as further described in the decree. The decree states in part:

10. The Court specifically addressed the Attorney ad Litem and stated that she has done as impressive a job as he has ever seen by an Attorney ad Litem in the face of phenomenally unfair, misdirected, classless attacks over and over and over again based on the pictures he had seen and the testimony that he heard.

11. The Court took these behaviors into account, along with everything else, when it decided visitation, how much visitation, and who may supervise visitation, if anybody.

. . . .

5

15.    The Court is very leery of letting children dictate how visitation works because it doesn't know whose agenda sometimes it truly is, and they are children. The . . . minor child is as bright and precocious and articulate a child as it has seen. Therefore, the Court is very cognizant of what the minor child stated on the witness stand and what her preferences are. The minor child's attitude toward her father during her testimony was significantly different, markedly different from the attitude she had the first time she testified in Jonesboro, which was some time before April 24, 2018. The Court finds that it is very clear that what happened to cause the change in attitude was the discussion between [Michael] and the minor child in the car about her testimony. On that day, [Michael] burned a bridge with that baby that violated this Court's previous Order.

. . . .

21.    The Court finds that child support will remain set at $691.00 per month, or $160.00 per week, based on a net income of $5,000.00 per month.

22.    This Court also finds that spousal support will remain set at $1,114.89 per month or $257.48 per week, based on a net income of $5,000.00 per month.

23.    These amounts were set by Judge Alexander in a Temporary Order based on the evidence that she heard at that time and the Court has received absolutely no credible evidence to dissuade it that that's not the proper amount. The Court specifically pointed out that [Michael] has two Mercedes, two Land Rovers, and lives in one of the most expensive neighborhoods in the second most successful city in Northeast Arkansas. The Court took into consideration the parties bank records that are in evidence as well as the testimony of [Jaime] that [Michael] would rather spend $1,000.00 on a snow globe rather than pay anything in spousal support, [Michael] left the Court no choice but to leave the support as it was previously ordered.

. . . .

32.    The Court dealt with several issues of contempt by [Michael]. The Court explained that each of these issues will be dealt with separately, and hence, each one will have its own amount of days to which [Michael] can be sentenced for contempt. [Michael] is hereby found in contempt for his violation of the Court's Orders as follows:

. . . .

b.      [Michael] was found in contempt for failure to pay his child support and his spousal support . . . [and] . . . is hereby sentenced [to] Thirty

6

(30) days in the Mississippi County Jail. After serving Five (5) of those days, [Michael] may purge himself of all the rest of the days by paying ALL of his back spousal support.

c. [Michael] is found in contempt for discussing this case with his daughter . . . [and] receives Ten (10) days in the Mississippi County Jail on that count of contempt. This is a separate contempt issue and will be consecutive to the other contempt days.

d. At the Temporary Hearing Judge Alexander ordered that neither party shall post or otherwise display any information about this matter by way of social media. [Michael] ignored that as much as he ignored everything else and for that he shall receive Ten (10) days in the Mississippi County Jail on that count of contempt. This is a separate contempt issue and will be consecutive to the other contempt days.

e. [Michael] is found to be in contempt for failing to properly remove [Jaime's] iPhone from his account and granting her full ownership of the device. [Michael] receives Three (3) days in the Mississippi County Jail on that count of contempt. This is a separate contempt issue and will be consecutive to the other contempt days.

33. The Court finds that the Plaintiff, Jaime Deline, is entitled to Judgment against the Defendant, Michael Deline, for unpaid Court-ordered child support in the amount of $4,418.00, and unpaid Court-ordered spousal support in the amount of $13,131.48, for a total Judgment of $17,549.48, together with an interest at the rate of 10% per annum, to be accrued until Judgment is satisfied in full.

The decree restates the trial court's previous injunctions regarding behavior and social media. It also divides the parties' real and personal property and their debts. Finally, Michael is ordered to pay $10,800 in attorney's fees to Jaime's attorney. Michael filed a timely notice of appeal on October 5, and this appeal followed.

II. *Motion for Continuance*

This court generally reviews domestic-relations cases de novo, *see Berry v. Berry*, 2017 Ark. App. 145, at 2, 515 S.W.3d 164, 166, but applies the abuse-of-discretion standard to the trial court's decisions denying motions for continuance. *Goodson v. Bennett*, 2018 Ark.

7

App. 444, at 6, 562 S.W.3d 847, 854. Michael argues that the trial court erred by denying his motion for continuance on the morning of the second day of trial when he could not appear due to illness.

Michael claims that on the first day of the hearing, he was suffering from high blood pressure and was "required to take his blood pressure periodically throughout the day." Also, he asserts that during the first day, he reported to the trial court that it had been suggested that he go to the emergency room, but he did not go and remained in attendance. He contends that on the second day, he reported to his attorney that while driving to court, he had almost "blacked out." He claims that he pulled over to rest, and he determined he needed to go to the emergency room, so he drove himself to the closest emergency room in Paragould. He also claims that his mother verified with the hospital by phone that Michael was in the emergency room in Paragould. He asserts that by cell phone, he sent his attorney a picture of himself on a hospital bed, and his attorney presented the photo to the trial court. The trial court denied his motion for continuance, and Michael contends that this holding was, in essence, a finding that his claim was not credible. Michael complains that he was unable to appear as a witness on his own behalf.

He cites *Ashworth v. Brickey*, 129 Ark. 295, 298, 195 S.W. 682, 684 (1917), which held that the trial court abused its discretion by denying a motion for continuance based on insufficient evidence to establish that the appellant was absent from court on account of drunkenness. Michael argues that he had participated in this matter for more than a year and had attended court on the first day of the hearing even though he had high blood pressure. He contends that even though Jaime and the attorney ad litem argued at trial that

8

he was attempting to avoid being called as a witness, he could have been called on the first day when he was present. Further, he claims that the divorce hearing was his chance to have his visitation reinstated. Finally, he provided medical records through his motion for reconsideration that reflect that he suffered from a "near syncope" event. His blood pressure was 159/100 when he arrived at the hospital and was 170/101 when he was discharged that afternoon. Michael contends that because the trial court denied his motion for continuance, he was prejudiced, and his rights were sacrificed.

We hold that the trial court did not abuse its discretion by denying Michael's continuance motion. Michael chose not to appear on July 26, and his counsel presented evidence and witnesses on Michael's behalf. The trial court heard testimony from Michael and Michael's witnesses on many occasions prior to the final hearing, and the trial court observed Michael on the first day of trial. We will not find an abuse of discretion unless a trial court acted "improvidently, thoughtlessly, or without due consideration." *Goodson*, 2018 Ark. App. 444, at 6, 562 s.w.3d at 854 (citing *Gerber Prods. Co. v. CECO Concrete Constr., LLC*, 2017 Ark. App. 568, at 6, 533 S.W.3d 139, 143). Given the extended nature of the proceedings and the trial court's finding that Michael was not credible in his request for a continuance, noting that Michael's motion had been predicted, we hold that the trial court's denial was not done thoughtlessly or without due consideration. Accordingly, we hold that the trial court did not abuse its discretion.[4]

---

[4]Jaime's preliminary arguments related to Arkansas Rule of Civil Procedure 11 and the finality of the divorce decree do not have merit. First, Jaime misidentifies Rule 11 as "Administrative Rule 11." Second, both arguments are premised on Jaime's contention that the divorce decree is not final. She claims that because two orders have modified the decree since the case has been pending on appeal, the appeal could be considered frivolous,

9

III. *Visitation*

We review visitation de novo and will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Vongkhamchanh v. Vongkhamchanh*, 2015 Ark. App. 584, at 6–7, 473 S.W.3d 570, 574. The main consideration for the court in awarding visitation is the best interest of the child. *Id.* Fixing visitation rights is a matter that lies within the sound discretion of the trial court. *Id.*

Michael contends that the Arkansas Supreme Court has held that in regard to change-of-custody cases, a trial court's decision must be based on concrete proof of likely harm to the child. *See Moix v. Moix*, 2013 Ark. 478, 430 S.W.3d 680 (stating that in case wherein the custodial parent resided with a lesbian woman, *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003), the court relied on cases from other states to support the proposition that there must be concrete proof of likely harm to the children from the parent's living arrangement before a change in custody can be made). He claims that such a standard should govern a decision to limit a parent's visitation.

Michael also relies on *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007), wherein this court reversed the trial court's decision to limit the mother's visitation, even

---

a tactic to stall the division of assets, and a means to inflict financial harm to her. Further, she argues that the decree's language "pending further orders of the court" in relation to visitation renders the decree unappealable for lack of finality. However, visitation and support orders are subject to modification. *See Blackwood v. Floyd*, 342 Ark. 498, 501, 29 S.W.3d 694, 696 (2000) (while there is continuing authority in the court granting a decree of divorce to revise or alter orders contained in such decree affecting the custody and control of the minor children of the parties, such orders cannot be changed without proof showing a change in circumstances from those existing at the time of the original order).

though the mother had harassed and alienated the child's father. We held that the evidence was insufficient to award the mother supervised visitation because the psychologist's report did not indicate that she had mental-health issues that rendered her incapable of caring for the child, and none of the evidence revealed that she had mistreated the child or neglected his needs during the time he was in her care. *Id.* In the same vein, he cites *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664, and *Williams v. Ramsey*, 101 Ark. App. 61, 270 S.W.3d 345 (2007).

Michael argues that his visitation was limited to Saturday and Sunday once a month from 10:00 a.m. until 6:00 p.m. He was also granted visitation from 10:00 a.m. to 6:00 p.m. on Father's Day, three hours on Christmas Day, three hours on Thanksgiving, and either some time on Memorial Day, the Fourth of July, or Labor Day, whichever Jaime allows. He asserts that the trial court's reasoning was that after EA testified at the April 24, 2018 contempt hearing, Michael discussed her testimony with her.

Michael also argues that there was no finding that he was unable to care for his daughter or that he had neglected her or caused her any physical harm. He contends that the trial court's findings regarding his behavior during the litigation process fail to warrant limiting his visitation. Citing *Moix*, *supra*, he claims that there is no concrete proof of likely harm to EA if he is allowed standard visitation. He contends that the trial court abused its discretion. He argues that the child's preference is only one factor to consider when determining visitation and that the other factors weigh in his favor. He also claims that his limited visitation has affected his mother's relationship with her grandchild.

11

Jaime argues that the trial court did not err in awarding Michael visitation rights, and the decision should be affirmed. We agree. The trial court properly considered the child's best interest, relying on the evidence before it of Michael's behavior, which included violations of court orders placed, in part, for the child's protection. EA testified at the final divorce hearing that Michael had discussed the testimony with her, had told her that she had lied, and had told her that the other parties were attempting to throw him in jail. The trial court found that EA's attitude toward her father had changed since the April 24 hearing and that the change was due to this conversation. EA also testified that she wanted to see her father on Saturday and Sunday once a month. The trial court granted this request, citing the conversation Michael had with EA following her April 24 testimony. Further, after two days of testimony at the final hearing, the trial court reinstated Michael's visitation and gave him an opportunity to gain more. The trial court was in the best position to determine what was in the child's best interest. We find no error and affirm.

IV. *Administrative Order No. 10*

In *Johnson v. Young*, 2017 Ark. App. 132, at 2–3, 515 S.W.3d 159, 161, we stated,

> We review child-support cases de novo on the record, but we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Bass v. Bass*, 2011 Ark. App. 753, 387 S.W.3d 218. We have further stated that a circuit court's finding is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731.

> The child-support scheme in Arkansas is governed by Arkansas Supreme Court Administrative Order Number 10 ("Administrative Order No. 10"), which includes a family support chart that indicates the amount of support due, depending upon the payor's income. *Id.* A trial court's order awarding child support must recite the amount of support required by the chart and recite whether the court deviated from that amount. *Id.* It is a rebuttable presumption that the amount of child support calculated pursuant to the chart is the appropriate amount. *Id.* If the court deviates

12

from the chart amount, it must include specific written findings stating why, after consideration of all relevant factors including the best interest of the child, the amount is unjust or inappropriate. *Id.*

Michael cites Arkansas Code Annotated section 9-12-312(a)(3)(A) (Repl. 2015), which provides that when determining a reasonable amount of child support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. He also refers to Administrative Order No. 10, which provides that all orders granting or modifying child support shall contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the family support chart.

Michael claims that there was no finding of his current income and no finding of the chart amount of support as determined by any current income. He complains that he was not able to present his affidavit of financial means or other proof due to the trial court's denial of his continuance motion. He asserts that the evidence presented regarding his income came from his mother, who testified that he had not worked for two years, and from Jaime, who testified that he had been fired from his previous employer. He argues that the evidence confirmed that he had no current source of income. He argues that there was no analysis by the trial court on whether there should be any deviation from the chart. He contends that support was set based on evidence derived at the temporary hearing and by the nature and value of the marital assets. He argues that support was not set on his current income and that the decree is in violation of the law.

Child support was set at the temporary hearing, wherein Michael testified about his income. The trial court found that Michael's income was $5,000 a month and that since

13

the temporary hearing, he showed no diligence in proving his income otherwise. Jaime argues that Michael did not answer interrogatories or provide financial information that had been subpoenaed by her. Most importantly, Michael failed to appear at the final hearing to present testimony. Having held that there was no abuse of discretion in denying Michael's motion for continuance, we hold that the trial court did not clearly err in setting child support based on the evidence in its record.

IV. *Spousal Support*

Michael argues that Administrative Order No. 10 requires that the trial court consider all relevant factors, including the chart, in determining the amount of any final order of spousal support. Here, temporary spousal support was set at the time of the temporary order at $1,114.89 a month or $257.48 a week based on Michael's net monthly income of $5,000. However, Michael argues that at the time of the final decree, the trial court did not consider all the factors as required; instead, the temporary order remained in effect. The trial court relied on the evidence derived from prior hearings, which included the size and location of the parties' house, the number and model of vehicles they own, and past bank records. He contends that this evidence of his past ability to pay is the basis for the permanent award.

Michael reiterates his argument as set forth above regarding his mother's and Jaime's testimony about his employment status and income. He complains that he owes Jaime $10,000 for her share of the household furniture, and he claims that he is in poor health. He contends that he is liable to Jaime for $1,805.89 a month for combined spousal and child

14

support.  He asserts that he has no income.  He claims that the equities in this case do not weigh in favor of any award of spousal support, let alone $1,114.89 a month.

The amount of spousal support was set at the temporary hearing wherein Michael testified to his income, and Administrative Order No. 10 is met by a finding of Michael's income of $5,000 a month.  Since then, he did not prove his income otherwise.  As outlined in section IV above, we affirm the trial court's order of spousal support.

## V. *Attorney's Fees*

As a general rule, attorney's fees are not allowed in the absence of a statute permitting their allowance. *Vice v. Vice*, 2016 Ark. App. 504, at 9–10, 505 S.W.3d 719, 725.  However, the trial court has an inherent power to award attorney's fees in domestic-relations proceedings, "and whether the trial judge should award fees and the amount thereof are matters within the discretion of the trial court." *Id.*

Michael contends that in determining whether to award attorney's fees, it has been held that the trial court must consider the relative financial abilities of the parties.  *Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408; *Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000).  Michael argues that as in *Jablonski*, wherein the wife was in a better position to pay her attorney's fees, the proof herein is that he is unemployed and has no income.  He claims that he has not worked in two years and that his mother has been giving him financial assistance.  He argues that the bank records admitted as evidence prove that his bank account was overdrawn by more than $300 at the time of the final hearing.  He argues that Jaime is employed as a substitute schoolteacher, and any income she earns is

more than he does.  Finally, he claims that he is in poor health.  Thus, he contends that the trial court abused its discretion in awarding attorney's fees to Jaime.

We hold that the trial court did not abuse its discretion.  The award of attorney's fees in a domestic-relations case is a matter within the trial court's discretion, and there is no fixed formula for determining what constitutes a reasonable amount. *See* Ark. Code Ann. § 9-12-309(a)(2) (Repl. 2015). A trial court has considerable discretion in the allowance of attorney's fees in a divorce case, and absent an abuse of that discretion, the fixing of the amount of fees will not be disturbed on appeal.  *Beck v. Beck*, 2017 Ark. App. 311, at 11, 521 S.W.3d 543, 549.  Here, the trial court had before it the evidence of Michael's income from the temporary hearing, the parties' bank records, and the testimony of his mother and Jaime from the final hearing, who both stated that Michael was not working.  The trial court specifically found that Michael's mother was not credible.  Further, the trial court was familiar with the protracted nature of the litigation, which included several contempt motions against Michael and continuance motions filed by him.  Finally, there was evidence that Jaime was a substitute schoolteacher and was also taking college courses.  Accordingly, the trial court had evidence of the relative financial abilities of the parties and did not abuse its discretion in awarding $10,800 in attorney's fees to Jaime.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Gibson & Thomas, P.A.*, by: *Jeremy M. Thomas*, for appellant.

*Connealy Law Firm*, by: *Michaelene Connealy*, for appellee.

16